634 F.Supp. 401 (1986)
Jacqueline WERT, et al., Plaintiffs,
v.
McDONNELL DOUGLAS CORP., et al., Defendants and Third-Party Plaintiffs,
v.
ACCO BABCOCK, INC., et al., Third-Party Defendants.
No. 84-2980C(1).
United States District Court, E.D. Missouri, E.D.
May 21, 1986.
John J. Frank, St. Louis, Mo., Wylie A. Aitken, Jeffrey C. Metzger, Santa Ana, Cal., for plaintiffs.
Terrence J. O'Toole, Peter T. Wendel, St. Louis, Mo., for defendant G.E. Co. and for McDonnell Douglas Corp.
Allen D. Allred, St. Louis, Mo., for defendant Martin-Baker Aircraft.
*402 Donald L. James, Brown, James & Rabbitt, St. Louis, Mo., for third party defendant ILC Industries.
John J. Horgan, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney, St. Louis, Mo., for defendant ACCO Babcock, Inc.
Ronald C. Willenbrock, St. Louis, Mo., for Wasley Products.
George F. Kosta, St. Louis, Mo., for defendant Eastern Steel Products Corp.

MEMORANDUM
NANGLE, Chief Judge.
This case is before the Court on defendants' joint motion to dismiss.
This cause of action arises out of an accident in which Major Larry I. Wert was killed after an unsuccessful ejection from an F-4C Phantom Fighter. The accident aircraft, assigned to and maintained by the Indiana Air National Guard, apparently caught fire and subsequently crashed near the Air Force's Gila Bend Tactics Range in Maricopa County, Arizona. Major Wert, at the time of the accident, was flying with his Indiana National Guard Unit (122nd Tactical Fighter Wing, 163rd Tactical Fighter Squadron) on a training mission from Luke Air Force Base, Arizona.
Plaintiffs filed this action under Arizona's wrongful death statute, A.R.S. §§ 12-611 et seq., in state court under theories of products liability (Count I) and negligence (Count II). Defendants are contractors who were involved in producing the F-4C Phantom aircraft pursuant to Government contracts. McDonnell Douglas Corporation (MDC) designed and produced the air frame. Martin-Baker Aircraft Co., Ltd. (Martin-Baker) designed and produced the ejection seat. General Electric (GE) designed and produced the F-4C's J-79-15A engines. Defendants removed the action to the Arizona federal district court and, on defendants' motion, were granted a change of venue to this Court pursuant to 28 U.S.C. § 1404(a).
Defendants now seek to dismiss all or part of plaintiffs' complaint. Defendants first allege that both counts of the complaint are barred by the Indiana statute of repose, I.C. § 34-4-20A-5.[1] In the alternative, defendants allege that under Arizona law, Count I is barred by the Arizona statute of limitations.[2] Plaintiffs, in response, assert that the Court should apply Missouri law, which would bar neither count of plaintiffs' complaint. For the reason stated herein, the Court finds that Arizona law applies to this cause of action. The Court further finds, however, that even under Arizona law, defendants' motion to dismiss Count I must be denied.
Following a change of venue on defendants' motion under 28 U.S.C. § 1404(a), the Court must apply the law that would have been applied in the transferor court. In the case at bar, the Court must apply the conflicts-of-laws rules of Arizona, the state from which the action was transferred. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 243, n. 8, 102 S.Ct. 252, 259, n. 8, 70 L.Ed.2d 419 (1981), citing Klaxon v. Stenor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). A change of venue under the forum nonconveniens statute, § 1404(a), should only change the *403 courthouse and not the applicable law. See VanDusen v. Barrack, 376 U.S. 612, 639, 84 S.Ct. 805, 820-21, 11 L.Ed.2d 945 (1964). See also 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3846.
Arizona has adopted the conflicts rules expressed in the Restatement (Second) of Conflicts of Laws. Schwartz v. Schwartz, 103 Ariz. 562, 447 P.2d 254 (1968) (en banc). Section 175 provides:
In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
Under the Restatement approach, an Arizona court would apply Arizona law to the issue in this case unless some other state has a more significant relationship. Determination of this relationship is influenced largely by the factors set forth in §§ 6 and 145. See Bryant v. Silverman, 146 Ariz. 41, 703 P.2d 1190 (1984) (en banc). Section 145 provides:
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, as to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
Restatement (Second) of the Conflict of Laws § 145 (emphasis added). The rules set forth in § 145 are commonly referred to as the "most significant relationship" approach. The principles of § 6, referred to in § 145 above, are as follows:
Choice of law principles are:
(a) The needs of the interstate and international system;
(b) The relevant policies of the forum;
(c) The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
(d) The protection of justified expectations;
(e) The basic policies underlying the particular fields of law;
(f) Certainty, predictability and uniformity of result; and
(g) Ease of determination and application of the law to be applied.
Under the Restatement analysis, the Court cannot simply apply the factors in a mechanical approach through a set formula. Instead, the Court must evaluate the relevant contacts in a case according to their relative importance with respect to a particular issue and determine which state's interests are best served by applying its rule of law to a resolution of that issue. See In re Air Crash Disaster Near Chicago, Ill., 644 F.2d 594, 610-11 (7th Cir.1981), cert. denied, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981). In the case at bar, plaintiffs allege, under theories of negligence and products liability, that the conduct of defendants MDC, Martin-Baker and GE resulted in the death of Major Wert while he was on maneuvers in the State of Arizona. It is defendants' position that under §§ 6 and 145, Indiana has a more significant relationship to the issues of defendants' conduct, thus requiring application of Indiana law. Defendants rely principally on three factors: first, that this is an aircraft accident; second, that the plaintiffs and the deceased were, at all *404 times relevant to this lawsuit, Indiana residents; and third, that the accident aircraft was assigned to and maintained by the Indiana Air National Guard (IANG).
In cases involving aircraft accidents, the general rule is that little weight is given to the place of injury in choice-of-law determinations. The usual explanation is that, given an airplane's mobility, the location of an unexpected event such as an airplane crash is almost always fortuitous. See Foster v. United States, 768 F.2d 1278, 1282 (11th Cir.1985); Saloomey v. Jeppesen & Co., 707 F.2d 671, 678 (2d Cir.1983); Cousins v. Investment Flyers, Inc., 44 N.Y.2d 698, 405 N.Y.S.2d 441, 443, 376 N.E.2d 914, 915 (1978). The Court, however, rejects defendants' talismanic approach to this case. This is not a typical flyover case. Major Wert was assigned to Luke Air Force Base in Arizona for the purpose of readiness training. At the time of the accident, Major Wert was conducting simulated bombing runs over the Gila Bend Tactics Range. He took off from, and was planning to land, at Luke Air Force Base. Therefore, there is more to Major Wert's presence in Arizona than the fortuitous flyover or transversing of Arizona air space.
Defendants' next two arguments concern the domicile of the plaintiffs and the deceased and the location of the aircraft.[3] Defendants argue that these contacts indicate a significant relationship to the cause of action thus requiring the application of Indiana law. Under Indiana law, both counts of plaintiffs' complaint are potentially barred by the Indiana statute of repose. Under Arizona law, only Count I of plaintiffs' complaint is potentially barred. In determining which law to apply, the Court must examine the policies behind the respective statutes.
In enacting its statute of repose, Indiana had as its primary purpose to limit the liability exposure of manufacturers in Indiana. Scalf v. Berkel, 448 N.E.2d 1201, 1204 (Ind.App.1983). The statute is intended to protect both courts and defendants, i.e., to conserve judicial resources and to provide repose to defendants. Tomlin v. Boeing Co., 650 F.2d 1065, 1070-71 (9th Cir.1981).[4] Although the Indiana statute would bar the action in an Indiana court, in a case such as this, where there is no domiciliary defendant, Indiana's interest should be discounted. Foster v. United States, 768 F.2d at 1283. Indiana does not have an interest in the application of its statute of repose to bar all recovery by an Indiana resident on actions that occurred outside the State of Indiana allegedly due to conduct by non-Indiana defendants. Accordingly, application of the Indiana statute of repose would not further the goals of the Indiana legislature. In addition to not furthering a goal of its legislature, application of the Indiana statute in this case would frustrate Indiana's policy of ensuring that its citizens be compensated for the tortious acts of others. See Note Products Liability and the Choice of Law, 78 Harv.L.Rev. 1452, 1467 (1965). See also Gordon v. Kramer, 124 Ariz. 442, 604 P.2d 1153, 1156 (Ariz.App.1979) ("The basic policy in the law of torts is to deter tortious conduct and provide compensation for injured victims").
Having determined that Indiana has no interest in having its law applied to this case, the Court must examine other possible states to determine whether their law should be applied. In selecting the applicable substantive law to be applied, the Court's decision must not be "so arbitrary or unreasonable as to amount to a denial of due process." Alaska Packers Assn. v. *405 Industrial Accident Comm'n., 294 U.S. 532, 542, 55 S.Ct. 518, 521, 79 L.Ed. 1044 (1935). Accordingly, the state selected "must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." Allstate Ins. Co. v. Hague, 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981).
As previously stated, under § 175 of the Restatement (Second) of Conflicts, the law of the place of the injury applies unless some other state has a more significant relationship. If other states are only involved to a minor degree, the law of the forum should be applied. Forsyth v. Cessna Aircraft Co., 520 F.2d 608, 611-12 (9th Cir.1975). Plaintiffs argue that Missouri has a more significant relationship to the issues of negligence and products liability. Plaintiffs stress that the plane was allegedly designed, manufactured and assembled by MDC in Missouri. Plaintiffs argue that Missouri has a significant interest in deterring the wrongful conduct of a prominent corporate citizen. See Tomkin v. Boeing Co., 650 F.2d at 1071. (The court applied the law of the place of the corporation's principal place of business for an accident which occurred in South Vietnam in a helicopter manufactured by Vetrol, a Pennsylvania based division of Boeing). See also In re Air Crash Disaster Near Chicago, Ill., 644 F.2d at 613-14.
In an Eighth Circuit decision, Foster v. Day & Zimmerman, Inc., 502 F.2d 867 (8th Cir.1974), the court applied the law of the place of manufacture in a case involving a defective hand grenade. The plaintiff, a Washington resident, enrolled in the Army Reserve Officer Training Program, was injured on a military reservation in Georgia when a hand grenade exploded in his hand. The hand grenade had been assembled in Texas by one defendant and contained a fuse manufactured in Iowa by a second defendant. The court rejected the application of Georgia law, the place of the injury, and applied Iowa law based on the fact that the alleged defective fuse was manufactured there. The case at bar is distinguishable from Foster v. Day & Zimmerman, Inc. In Foster, the court was able to identify the state in which the alleged defective component was manufactured. In this case, however, the parties are in serious disagreement over the exact cause of Major Wert's death. Accordingly, the parties have been unable to direct the Court to any forum as the place of manufacture of an alleged defective component or the place of an alleged negligent act. It would make little sense to apply Missouri law if in fact no tortious acts occurred within this state.
Plaintiffs further argue, however, that MDC should not be surprised or prejudiced by the application of the law of the place of manufacture of the aircraft. The difficulty with plaintiffs' argument, however, is that it ignores the remaining defendants and many of the facts in this case. Martin-Baker is a British corporation. GE is a New York corporation which manufactured the aircraft engines in the State of Ohio. Plaintiffs do not attempt to justify the application of Missouri law to these other defendants. Moreover, defendants have filed a third-party petition against Acco Babcock, Inc., Wasley Products, Inc. and ILC Industries, Inc. for their alleged conduct in association with Major Wert's personal parachute. Again, plaintiffs fail to explain how application of Missouri law to these non-Missouri resident defendants would be justified.
Section 175 is clear. The law of the place of injury applies unless another state has a more significant relationship. The parties have failed to demonstrate to the Court that any such relationship exists. The parties give little weight to Arizona's interest in this case. It is clear, however, that each state has paramount responsibility to preserve the general security within its borders and protect welfare of persons within its jurisdiction. See Note Products Liability and the Choice of Law, supra, at 1461 (1965). The Seventh Circuit found that Illinois, the place of an airplane accident, has a strong interest in not suffering *406 air crash disasters and also in promoting airline safety. In re Air Crash Disaster Near Chicago, Ill., 644 F.2d at 615-16. In Bryant v. Silverman, 146 Ariz. 41, 703 P.2d 1190, 1196, the Arizona Supreme Court noted that "Arizona has a strong policy interests in fully compensating injured plaintiffs to make them whole." In addition to promoting the policies of the forum state, applications of Arizona law would have the additional benefit of predictability, uniformity of result and ease of determination and application. See Section 6 of the Restatement (Second) of Conflicts, supra. Therefore, the Court will apply the law of Arizona, the original forum state.[5]
The Court's decision to apply Arizona law should hardly surprise the plaintiffs or defendants in this case. The deceased was a member of a National Guard Unit on assignment to Luke Air Force Base in Arizona. The nature of the maneuvers that were being conducted were known to the pilots of the aircraft. One would expect that the law of the place of the injury would apply to conduct planned and performed in a specific state. Moreover, if Major Wert were an Arizona citizen, there would be little question that Arizona law would be applied. The Court finds it unfair to subject a stranger to less protection than that afforded to a resident.[6]See Broome v. Antlers' Hunting Club, 595 F.2d 921, 925 (3d Cir.1979). The defendants are contractors who participated in the production of the F-4C Phantom Fighter. The Court has no doubt that defendants expected assignment of the Phantom to bases throughout the United States and overseas. Accordingly, application of Arizona law should come as no surprise to these defendants.
Defendants argue that even under Arizona law, plaintiffs' products liability claim is barred by the Arizona statute of limitations. The Court cannot agree. In passing on a motion to dismiss, a court is required to view the facts alleged in the complaint in the light most favorable to the plaintiff. Scheurer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A motion to dismiss will not be granted merely because the complaint does not state every element necessary for recovery with precision. 5 Wright & Miller, Federal Practice and Procedure § 1216 at 120 (1969). A complaint is sufficient if it "contain[s] allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Id. at 122-23. A complaint should not be dismissed unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46, 78 S.Ct. at 102.
Plaintiffs allege that the statute is not a bar because subsequent to the sale or delivery of the aircraft, repairs and/or modifications to the aircraft were made. The Court agrees with plaintiffs that these allegations preclude granting defendants' motion to dismiss.[7] Moreover, neither the Court nor the parties will benefit from such an early dismissal of Count I of plaintiffs' complaint. The products liability count is an alternative theory of recovery. The *407 Court cannot believe that the amount of necessary discovery in this case will be significantly shortened by limiting plaintiffs' causes of action solely to their negligence count. Accordingly, the Court will deny defendants' joint motion to dismiss Count I.
As a final matter, plaintiffs seek to have the Court strike down Arizona's twelve year products liability statute of limitation (Ariz.Rev.Stat.Ann. § 12-551) as unconstitutional. Plaintiffs allege that the statute is in violation of Article XVIII, § 6 of the Arizona Constitution. The Court has doubts about plaintiffs' position and furthermore feels ill-equipped at this stage in the proceedings to attempt resolution of this issue. While § 12-551 has not been reviewed by the Arizona courts, at least one commentator has suggested that it is unlikely that the statute is unconstitutional. See Dennis, Product Liability Statutes of Repose as Conflicting With State Constitutions: The Plaintiffs Are Winning, 26 Ariz.L.Rev. 363. But see Berry v. Beech Aircraft Corp., 717 P.2d 670 (Utah, 1985) (Utah Supreme Court found the state's product liability statute of repose violates the state constitution's open court provision). Furthermore, the Court has not granted defendants' motion to dismiss plaintiffs' products liability count. Accordingly, the Court will deny plaintiffs' request without prejudice to their raising this argument at a later date.
NOTES
[1] Ind.Code § 34-4-20A-5 provides, in pertinent part:

[A]ny product liability action in which the theory of liability is negligence or strict liability in tort must be commenced within two [2] years after the cause of action accrues or within ten [10] years after the delivery of the product to the initial user or consumer; except that, if the cause of action accrues more than eight [8] years but not more than ten [10] years after the initial delivery, the action may be commenced at any time within two [2] years after the cause of action accrues.
[2] Ariz.Rev.Stat.Ann. § 12-551 provides, in pertinent part:

[N]o product liability action ... may be commenced and prosecuted if the cause of action accrues more than twelve years after the product was first sold for use or consumption, unless the cause of action is based upon the negligence of the manufacturer or seller or a breach of an express warranty provided by the manufacturer or seller.
[3] In aircraft litigation cases, the relationship of the parties is generally centered on the aircraft itself. Pittway Corp. v. Lockheed Aircraft Corp., 641 F.2d 524, 527 n. 2 (7th Cir.1981).
[4] The extent to which a products liability statute of repose achieves these goals is a matter of controversy. Compare Black v. Henry Pratt Co., 778 F.2d 1278, 1284 (7th Cir.1985) (Indiana's adoption of a product liability statute of limitations to limit open-ended liability represents the enlightened approach) with Berry v. Beech Aircraft Corp., 717 P.2d 670 (Utah, 1985) (the number of claims barred would be insufficient to affect insurance premium rates and the statute may well lead to fewer safety precautions and thus, in the end, be counterproductive).
[5] The Court's ability to analyze the relationships in this case thoroughly is limited due to the fact that, while this case is almost two years old, it is still in the early stages of discovery. Accordingly, while denying defendants' joint motion to dismiss based on Indiana's statute of repose, it is quite possible that at a later date, the Court may modify its holding that Arizona law applies to every issue and defendant in this case.
[6] As previously mentioned, Major Wert's assignment to training duty in Arizona makes him less of a non-resident than the average stranger who travels through the State of Arizona.
[7] Defendant Martin-Baker cites the Court to a recent Seventh Circuit opinion, Black v. Henry Pratt Co., 778 F.2d 1278 (7th Cir.1985). In that action, the court held that the sale of components (replacement parts) which were totally unrelated to the alleged defect or unreasonably dangerous condition existing in the original product did not extend or toll Indiana's product liability statute. While this same argument may ultimately prove to bar plaintiffs' product liability count under the Arizona statute, the Court cannot say at this point that the repairs and/or modifications were unrelated to the alleged defect or unreasonably dangerous condition.