Rodney **BOWMAN**, Plaintiff-Appellant,

v.

**NIAGARA MACHINE AND TOOL WORKS, INC.**, Defendant-Appellee.

No. 87–1523.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1987.
Decided Nov. 3, 1987.
As Amended Nov. 5, 1987.

Richard D. Schrieber, Schrieber & Sevenish, Indianapolis, Ind., for plaintiff-appellant.

James J. Shea, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, Ind., for defendant-appellee.

Before WOOD, FLAUM and EASTERBROOK, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff Rodney Bowman appeals from the district court's grant of summary judgment dismissing his product liability action against defendant Niagara Machine and Tool Works, Inc. ("Niagara"), 620 F.Supp. 1484. In dismissing the action the district court relied on Indiana's statute of repose applicable to product liability actions, Ind. Code § 33–1–1.5–5, which requires that such actions be filed within 10 years of the delivery of the product to its initial user or consumer. Bowman challenges the validity of Ind.Code. § 33–1–1.5–5, claiming that it violates the Commerce and Equal Protection clauses of the United States Constitution. We affirm.

I.

The material facts surrounding Bowman's injury are not in dispute. At the time of the injury Bowman was employed by I.T.T. Thompson Industries at its plant in North Vernon, Indiana. On May 20, 1982, while operating a sheet metal press at the plant, Bowman suffered injuries to his right hand.[1] The press was manufactured by Niagara and shipped to its initial purchaser, the Marietta Aircraft Assembly Plant, in 1943; Niagara has not performed any maintenance or service or had any other contact with the press since that time.

Bowman initially filed this action in an Indiana state trial court, but the case was removed to federal court by Niagara based on diversity of citizenship of the parties. On motion of Niagara, the district court granted summary judgment and dismissed the action on grounds that Bowman's complaint was filed more than 10 years after the press was delivered to its first user. (In fact, it was filed more than 40 years thereafter.) The district court relied on Ind.Code § 33–1–1.5–5, which provides, in pertinent part, that:

... any product liability action in which the theory of liability is negligence or strict liability in tort must be commenced within two [2] years after the cause of action accrues or within ten [10] years after the delivery of the product to the initial user or consumer....

Despite the use of the disjunctive "or" in the quoted passage, the Supreme Court of Indiana has interpreted § 33–1–1.5–5 to require that a product liability action be filed "within two years after [the action] accrues, but in any event within ten years after the product is first delivered to the initial user or consumer ...," Dague v. Piper Aircraft Corp., 275 Ind. 520, 418 N.E.2d 207, 210 (1981) (on certification from this court). Bowman does not contest this interpretation of § 33–1–1.5–5 or the district court's holding that it bars his action. Rather, Bowman's arguments are directed to the validity of the statute itself.

II.

Bowman argues that Ind.Code § 33–1–1.5–5 violates his right to equal protection of the laws, as guaranteed by the

---

1. Niagara has not conceded that any defect in the press caused Bowman's injury, but that fact is not material for purposes of this appeal.

Fourteenth Amendment, because it creates two classes of potential product liability plaintiffs—those who discover their injury and file an action within ten years of initial product delivery and those who discover their injury after the ten year period has elapsed. As Bowman concedes, this court has already held that the ten-year repose provision of § 33–1–1.5–5 does not violate the Equal Protection Clause because it is rationally related to a legitimate state interest, *i.e.* the protection of manufacturers from certain losses due to defects in products placed in the stream of commerce. *See Braswell v. Flintkote Mines, Ltd.,* 723 F.2d 527, 531 (7th Cir.1983), *cert. denied,* 467 U.S. 1231, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984); *Pitts v. Unarco Industries, Inc.,* 712 F.2d 276, 280 (7th Cir.), *cert. denied,* 464 U.S. 1003, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983). According to Bowman, however, *Braswell* and *Pitts* are inapplicable to his case because they applied a "rational basis" test in connecting the effect of the repose provision with the state interests it advanced. Bowman claims that we must strictly scrutinize the relationship between the statute and the asserted state interests because § 33–1–1.5–5, by requiring the dismissal of his lawsuit, has denied him access to the courts in violation of the First and Fourteenth Amendments. He argues that his right of access to courts is "fundamental," and that any legal distinction that deprives him of a "fundamental" right must be the subject of strict judicial scrutiny and may only be upheld if it furthers a "compelling" state interest.

As a general matter, legislative classifications alleged to violate the Equal Protection Clause will be sustained if they are rationally related to a legitimate state interest. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Griffin High School v. Illinois High School Ass'n,* 822 F.2d 671, 674 (7th Cir.1987). However, the Supreme Court has directed the application of a "heightened" level of scrutiny in cases where the challenged classification burdens a "suspect class" or where (as Bowman argues is the case here) the classification infringes upon a "fundamental" right. *Attorney General of New York v. Soto-Lopez,* 476 U.S. 898, ——, 106 S.Ct. 2317, 2322 n. 6, 90 L.Ed.2d 899 (1986); *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 16 n. 39, 29, 93 S.Ct. 1278, 1287 n. 39, 1294, 36 L.Ed.2d 16 (1973). When a challenged legal classification is subjected to strict scrutiny, it may only be sustained if the state interest that it advances is a compelling one.

Bowman argues that the classification created by Ind.Code § 33–1–1.5–5 resulted in the dismissal of his product liability claims against Niagara, thereby denying him access to court to obtain compensation for his injury, and that the state has no compelling interest in thus extinguishing his claim.[2] We need not quarrel with Bowman's assertion that the right of access to courts constitutes a "fundamental" right which would, if infringed, demand as justification a compelling state interest. We conclude that Bowman has not in fact been denied access to courts in the constitutional sense.

Bowman cannot claim that he has been denied access to court simply because the Indiana legislature has restricted a particular cause of action in a way that makes it unavailable to him. Such an approach confuses "access" with "success," and Bowman is not constitutionally entitled to the latter. The concept of constitutionally protected access to courts revolves around whether an individual is able to make use of the courts' processes to vindicate *such rights as he may have,* as opposed to the exent to which rights actually are extended to protect or compensate him. Claims of violation of the right of access to courts have thus focused on the availability of suitable court processes to vindicate existing rights or, more commonly, the ability of an individual to make use of those processes. *See, e.g., Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72

---

**2.** Although Bowman concedes that this court has already held, in *Braswell* and *Pitts,* that the statute in question is rationally related to a legitimate state interest, he nonetheless describes the statute's effect as "arbitrary" and the state's interest therein as "illusory."

(1977) (requiring prison authorities to provide inmates with adequate law libraries or legal assistance in order to permit meaningful litigation of appeals from convictions or other constitutional claims); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1262–63 (7th Cir.1984) (conspiracy by local officials to conceal information that could have formed the basis for a claim under 42 U.S.C. § 1983). In contrast, Bowman's claim concerns specific substantive rights that the legislature has declined to extend to a group of persons that includes him. Bowman has not alleged that he has been denied access to either state or federal courts to enforce any right that *has* accrued to him.

Because the judicial process is open to him, even if the cause of action he would pursue is not, we conclude that Bowman has failed to present a claim of denial of access to courts by operation of Ind.Code § 33–1–1.5–5, and therefore that the statute need only be examined under the "rational basis" test. Adhering to this court's prior holdings in *Braswell* and *Pitts*, we find that the ten-year repose provision is rationally related to a legitimate state interest. Accordingly, we reject Bowman's challenge to the statute under the Equal Protection Clause.

### III.

Bowman brings his second, and more novel, challenge to Ind.Code § 33–1–1.5–5 under the Commerce Clause of the United States Constitution, Article I, § 8, Clause 3, which empowers Congress "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes...." Bowman's Commerce Clause argument is a sweeping one; he contends no less than that any state regulation of product liability unconstitutionally impedes the flow of interstate commerce by subjecting product manufacturers to inconsistent regulation from state to state. In support of this claim Bowman submitted the affidavit of an economics professor, Dr. Robert Sandy, who concluded that § 33–1–1.5–5 affects interstate commerce by creating financial benefits for product manufacturers that are disproportionately located outside Indiana. Bowman also presented to the district court testimony given at Congressional committee hearings in support of proposed federal legislation that would create uniform product liability standards throughout the nation.

■ It is now beyond question that the Commerce Clause prevents the states from impeding the flow of interstate commerce, even absent Congressional action in a particular field. *Raymond Motor Transportation v. Rice*, 434 U.S. 429, 440, 98 S.Ct. 787, 793, 54 L.Ed.2d 664 (1978); *Cooley v. Board of Wardens*, 53 U.S. (12 How.) 299, 13 L.Ed. 996 (1852).[3] As the Court observed in *Rice*, though, there is a substantial body of state legislation that "affects" commerce but, because it serves legitimate state interests[4] and is applied without discriminating against interstate commerce, does not violate the Commerce Clause. 434 U.S. at 440, 98 S.Ct. at 793. While precise standards must differ from case to case, the best "general rule" articulated by the Supreme Court is as follows:

Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on

**3.** The district court seemed to suggest the contrary: "[o]nly if and when Congress decides to enact a federal products liability law, therefore preempting state laws, should this Court determine if the Indiana statute interferes with the uniform federal law." *Bowman v. Niagara Machine and Tool Works, Inc.*, 620 F.Supp. 1484, 1485 (S.D.Ind.1985).

**4.** Bowman insists that the statute serves *no* legitimate state purpose because insurance companies actually set their rates on a national, rather than local, basis. He also asserts that the purpose of the law cannot be legitimate because it transfers the cost of injuries from product manufacturers to Indiana taxpayers and to injured Indiana citizens (see *infra* n. 5), thereby providing no benefit to Indiana citizens. These arguments address the wisdom of the repose statute rather than its rationality. The reduction of costs to product manufacturers doing business in Indiana is a legitimate state purpose, whatever Bowman (or this court) might think of its advisability.

such commerce is clearly excessive in relation to the putative local benefits.... If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970) (citation omitted).

■ Bowman advances two related theories under which Ind.Code § 33–1–1.5–5 violates the Commerce Clause. First, citing Dr. Sandy's affidavit, he claims that the statute actually affects the stream of commerce by encouraging the "dumping" of old and/or defectively designed machines in states like Indiana that "shelter" manufacturers from extended liability.[5] The "dumping" effect allegedly illustrates the principal on which Bowman's second theory is based. Bowman claims that the Commerce Clause *requires* uniformity in the area of products liability regulation because the existence of differing liability standards among different states will inevitably affect the stream of interstate commerce as various manufacturers take the risks of liability into account in deciding where to offer their products, and as insurers attempt to calculate liability insurance rates accurately.

■ It is of course true that certain fields of commerce by nature require that any regulation be uniform, and therefore that any regulatory action come from Congress rather than from individual states. *CTS Corp. v. Dynamics Corp. of America*, —— U.S. ——, ——, 107 S.Ct. 1637, 1649, 95 L.Ed.2d 67 (1987); *Cooley*, 53 U.S. (12 How.) at 319. Upon review of Bowman's contentions, though, we do not find that product liability in tort, whether strict or otherwise, is such an area. Bowman cites several parties who might be burdened by the Indiana repose statute, including injured parties whose compensation is reduced or diminished and taxpayers and employers who may be forced to absorb some of the costs of compensation, but we do not see how these burdens affect the stream of interstate commerce. To the contrary, they seem to raise particularly local concerns. The mere fact that such considerations may also affect commercial decisions by actors in other states, such as insurance companies or manufacturers, does not implicate the Commerce Clause. Differences in the conditions and risks of doing business from state to state are in part the inevitable result of *any* state economic regulation, but the effects that these differences have on commercial decisions, even those that involve interstate trade, are not by themselves nearly so direct as to "affect commerce" in the constitutional sense. Because Bowman has utterly failed to demonstrate any discriminatory impact or substantial burden on interstate commerce by virtue of Indiana's legislative decision to restrict its products liability cause of action, we reject his Commerce Clause claim.

### IV.

We recognize that Ind.Code § 33–1–1.5–5 places Rodney Bowman in what seems an

---

5. Bowman also argues, in his brief and through Dr. Sandy's affidavit, that statutes like the one at issue in this case allow a state to transfer the costs of injuries from manufacturers to other parties, such as employers, state taxpayers and injured persons themselves. However, the Indiana statute of repose does not appear to encourage this transfer, if at all, in a manner that discriminates against *interstate* commerce. The statute protects manufacturers both within and without the state of Indiana. Indeed, as the district court observed, the Indiana statute of repose may encourage a higher volume of interstate commerce by sheltering out-of-state manufacturers and shifting injury costs from them to employers, taxpayers and injured persons within Indiana. *Bowman v. Niagara Machine and Tool Works, Inc.*, 620 F.Supp. 1484, 1485 (S.D. Ind.1985). Whether or not this "pro-commerce" effect exists, the fact that the Indiana repose provision may more often protect out-of-state manufacturers than those located in Indiana (because most machines in Indiana are made elsewhere) does not bring that provision into conflict with the Commerce Clause because the statute itself treats manufacturers evenhandedly. *Cf. CTS Corp. v. Dynamics Corp. of America*, —— U.S. ——, ——, 107 S.Ct. 1637, 1659, 95 L.Ed.2d 67 (1987) (statute that discourages tender offer does not discriminate against interstate commerce simply because most tender offers come from out-of-state parties).

anomalous position by eliminating his cause of action almost 30 years before his injury (and, as counsel points out, several years before his birth). Nevertheless the decision to restrict the compensatory right in this manner was properly made by the Indiana legislature, and we may not interfere with that decision absent some infringement of a constitutionally protected right or interest. Accordingly, for the reasons set forth above, the judgment of the district court is AFFIRMED.