Juan JAUREQUI, Plaintiff–Appellant,

v.

JOHN DEERE COMPANY and Deere &
Company, Defendants–Appellees.

No. 91–3852.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1992.

Decided Feb. 8, 1993.

Rehearing and Rehearing En Banc
Denied March 9, 1993.

William G. Stone, James R. Branit (argued), C. Lynn Lowder, Randall A. Carlisle, Bullaro, Carton & Stone, Chicago, IL, for plaintiff-appellant.

James V. McGlone, John M. Stuckey (argued), Stuart & Branigin, Lafayette, IN, for defendants-appellees.

Before CUMMINGS and MANION, Circuit Judges, and ZAGEL, District Judge.[1]

ZAGEL, District Judge.

Juan Jaurequi ("Jaurequi") was the victim of a tragic accident involving a John Deere 343 Quik–Thatch Corn Head ("Corn Head"). In August of 1987, Jaurequi, a

1. The Honorable James B. Zagel, District Judge for the Northern District of Illinois, is sitting by designation.

citizen of Spain and botany student at the University of Seville, received an internship with Texas Triumph Seed Company ("Triumph"). Triumph is a Texas corporation located in Ralls, Texas, in the business of researching and developing hybrid crops. In September of 1987, Jaurequi and two other Triumph employees travelled from Lubbock, Texas to Missouri to perform grain research on one of Triumph's research test plots. On September 6, 1987, near Portageville, Missouri, Jaurequi began harvesting a test plot of sorghum, using a Massey combine and the Corn Head attachment as a stationary processing unit. That afternoon, while hand-harvesting the crop into the Corn Head for threshing, Jaurequi was pulled into the machine, traumatically amputating both of his legs.

Jaurequi filed suit in Texas state court against John Deere & Company, Deere & Company (collectively referred to as "Deere"), R.F. Fields Implement Company ("Fields"), and Carter Manufacturing Company, Inc. ("Carter"). Jaurequi sought damages under theories of product liability (both strict liability and negligence) and breach of warranty. Defendants jointly removed this diversity case from state court. Thereafter, Deere successfully moved to transfer venue from the Western District of Texas to the Northern District of Indiana. Prior to transfer, however, the Texas federal court dismissed defendant Fields for lack of personal jurisdiction.

After transfer, the Indiana district court ordered the remaining parties to brief the choice-of-law issues applicable to the case. Deere and Carter contended that Indiana law, specifically Indiana's statute of repose, applied to the case. Throughout the course of proceedings, however, Jaurequi maintained that Missouri law applied to both defendant Deere and Carter. Unlike Indiana, Missouri's legislature did not enact a statute of repose.

Deere won partial summary judgment by asserting that under the applicable choice of law, Indiana's statute of repose [2] barred Jaurequi's products liability actions.[3] Jaurequi appeals the judgment in favor of Deere.

## I.

■ We review *de novo* the district court's choice of law and grant of summary judgment, drawing all reasonable inferences in the light most favorable to the nonmoving party. *LAK, Inc. v. Deer Creek Enters.*, 976 F.2d 328, 330 (7th Cir.1992); *Kincaid v. Vail*, 969 F.2d 594, 600 (7th Cir.1992). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In this case, there is no genuine issue of material fact if Indiana's statute of repose operates to cut off Deere's liability for any design or manufacturing defect in the Corn Head.

## II.

No one disputes that, if applicable, Indiana's statute of repose bars Jaurequi's products liability claims because the accident occurred more than 10 years after the Corn Head was delivered to its initial pur-

---

**2.** Indiana's Statute of Repose provides:

A product liability action must be commenced within two (2) years after the cause of action accrues or within ten (10) years after the delivery of the product to the initial user or consumer. However, if the cause of action accrues at least eight (8) years but less than ten (10) years after initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues. IND.CODE § 33–1–1.5–5 (1988).

**3.** Carter subsequently filed a similar motion. The motion, however, became moot when Carter entered into a settlement agreement with Jaurequi and, subsequently, was dismissed from the case.

Deere also moved for summary judgment on the remaining breach of warranty claim based on the absence of privity. Jaurequi responded by moving to dismiss the warranty claim. Finally, on December 15, 1991, the district court granted Jaurequi's motion and entered final judgment in favor of Deere.

chaser. Deere originally designed and manufactured this Corn Head in 1974, in Moline, Illinois. On October 28, 1975, Monticello Implement Company ("Monticello") sold the Corn Head to Robert Dahnke in Monticello, Indiana. Although the record does not reveal the manner by which Monticello acquired the Corn Head, it is undisputed that Deere cast the Corn Head into the stream of commerce in Indiana in 1975. In any event, Jaurequi's accident occurred in September 1989, almost 14 years after the original sale to Robert Dahnke.

## III.

■ The issue simply is whether Indiana's statute of repose applies here. The district court, as a transferee court sitting in diversity, is obligated to apply the choice-of-law rules followed by the transferor court—in this case, the Texas district court. *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Furthermore, the *Erie* doctrine requires a Texas district court, sitting in diversity, to apply the substantive law of the forum state, including its choice-of-law principles. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Tennimon v. Bell Helicopter Tex-*

*tron, Inc.*, 823 F.2d 68, 70 (5th Cir.1987); *Goad v. Celotex Corp.*, 831 F.2d 508, 510 (4th Cir.1987) (after § 1404(a) transfer, district court in Virginia was required to apply same choice of law as Texas state court).

■ In 1979, the Texas Supreme Court abandoned the mechanical *lex loci delecti* rule and adopted the "Most Significant Relationship" approach, from the Restatement (Second) of Conflict of Laws §§ 145, 146, and 6 ("Second Restatement"). *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex. 1979). The "Most Significant Relationship" rule was intended to prevent the "harsh and inequitable" results produced by the talismanic application of the law of the state in which the injury occurred.[4] *Gutierrez*, 583 S.W.2d at 317. Texas courts subscribe to this new rule because it results in an equitable and reasoned choice-of-law decision that meets the demands of our highly mobile modern society. *Id.* at 317; *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420–21 (Tex.1984).

Under this approach, a court must apply the law of the state with the most significant relationship to the particular substantive issue.[5] The Second Restatement rule

**4.** We cannot apply section 142 of the Second Restatement. Certainly, section 142 governs choice of law for statutes of limitations, and if adopted, would govern the statute of repose issue in this case. Yet, no Texas court has formally adopted or even applied section 142. To the contrary, Texas courts have applied sections 6 and 145 to all civil matters, except contract cases in which the parties have agreed to a valid choice-of-law clause. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984); *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099 (5th Cir.1981) (analyzing choice of law for statute of limitations under Second Restatement §§ 6 and 145, as adopted by Texas courts). In fact, a Texas appellate court has even applied sections 6 and 145 in determining whether Indiana's statute of repose barred plaintiff's products liability claim against a defendant manufacturer. *Perry v. Aggregate Plant Prods. Co.*, 786 S.W.2d 21 (Tex.Ct.App.1990) (applying sections 6 and 145 of the Second Restatement to choice-of-law issue regarding whether Indiana's statute of repose barred plaintiff's products liability claim against defendant manufacturer). Furthermore, application of sections 6, 145 and 146 of the Second Restatement in this case is consistent with the Texas Supreme Court's re-

solve to abandon rigid rules in favor of a flexible mechanism for deciding choice-of-law issues.

**5.** Section 145 of the Second Restatement provides:
   (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
   (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
      (a) the place where the injury occurred,
      (b) the place where the conduct causing the injury occurred,
      (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
      (d) the place where the relationship, if any, between the parties is centered.
   These contacts are to be evaluated according to their relative importance with respect to the particular issue.
   RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1979).

specifically dictates that "in an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship ... in which event the local law of the other state will be applied." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146 (1979).

Each substantive issue in the case mandates an independent, quantitative and qualitative evaluation and decision. A court first must isolate the pertinent issue, examine each state's connection to the occurrence, identify the governmental policies espoused by each state relevant to the issue, and proclaim applicable the law of the state with the superior interest. *Allison v. ITE Imperial Corp.*, 928 F.2d 137, 141 (5th Cir.1991); *Duncan*, 665 S.W.2d at 421.

### IV.

At the core of the dispute between the parties is the role, if any, that Carter plays in the choice-of-law analysis. Jaurequi suggests that each defendant is entitled to a separate conflicts analysis because different state laws may be applied to Deere and then named defendant Carter. Jaurequi's argument embraces the conflicts analysis that this Court espoused in *In re Air Crash Disaster Near Chicago*, 644 F.2d 594 (7th Cir.1981).

In response, Deere argues that Carter's contacts with Indiana must be factored into the choice-of-law analysis because Carter was a defendant at the time the district court granted summary judgment. Deere portrays Jaurequi's individualized conflicts approach as an "attempted 'end run' around the district court's ruling" and cautions this Court not to fall for Jaurequi's play and erroneously consider on appeal

factual developments (Carter's settlement and dismissal) that occurred after summary judgment. Finally, Deere raises a waiver argument. Deere argues that Jaurequi waived any error assignable to the district court's analysis by not having urged that court to conduct an independent choice-of-law analysis for each defendant.

■ Deere's arguments do not work. First, Jaurequi's failure to caution the district court of its need to conduct a separate analysis for each defendant is neither fatal nor erroneous. To preserve a choice-of-law issue for appeal, Jaurequi need only notify the court in a timely manner of the applicability of another state's law. *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5th Cir.1987) (federal courts must "take judicial notice of the content of the laws of every state in the Union"). Jaurequi's position throughout the entire proceedings was that Missouri law applied to both Deere and Carter. There was no reason for him to ask for a separate analysis for each defendant. He reasonably could assume that the district court would follow the established Texas law. We, therefore, find that Jaurequi did not waive the issue regarding independent choice-of-law analysis.

We are not persuaded, however, that Texas state courts adhere to the principle of conducting separate conflicts analysis for each defendant. Nevertheless, we are persuaded that Texas choice-of-law rules mandate a separate conflicts analysis for each substantive issue, which in this case translates into a separate conflicts analysis for each defendant's conduct. The district court was presented essentially with two issues for purposes of choice-of-law analysis: 1) whether Indiana's statute of repose barred the products liability claim based on negligent manufacturing and design (claim against Deere); and 2) whether Indiana's

Section 6(2) provides:
[T]he factors relevant to the choice of the applicable rule of law include[:]
  (a) the needs of the interstate and international systems,
  (b) the relevant policies of the forum,
  (c) the relevant policies of the other interested states and the relative interests of those states in the determination of the particular issue,

  (d) the protection of justified expectations,
  (e) the basic policies underlying the particular field of law,
  (f) certainty, predictability and uniformity of result, and
  (g) ease in the determination and application· of the law to be applied.
RESTATEMENT (SECOND) OF CONFLICT OF LAW § 6(2) (1979).

statute of repose barred the products liability claim based on negligent modification (claim against Carter).[6] The district court, however, did not isolate sufficiently these products liability issues as is required by Texas choice-of-law rules. Instead, it collectively considered both Carter's and Deere's contacts and rendered a single decision as to the choice of law applicable to the products liability causes of action.

When the issues are separated properly, Carter's contacts are irrelevant to whether the applicable choice-of-law rules dictate that Indiana's statute of repose bars Jaurequi's products liability claim for negligent manufacturing and design. Jaurequi's claims against Deere are based solely on allegations of defective design and manufacture of the harvesting mechanism and inadequate warnings in the front area of the machine near the gathering chains. To succeed on these claims, Jaurequi must show that the defective condition causing the injury existed at the time the Corn Head left Deere's control. Carter's subsequent actions are irrelevant to these claims

because Carter did not modify the areas claimed to be defective and, furthermore, any such modification occurred approximately eleven years after Deere's initial sale to Robert Dahnke.[7] Accordingly, we disregard Carter's Indiana contacts in our analysis.

### V.

■ Deere is a Delaware corporation with its principal place of business in Illinois; Jaurequi is a citizen of Spain; the Corn Head was designed and manufactured in Illinois and placed into the stream of commerce in Indiana;[8] and the injury occurred in Missouri. According to section 146 of the Second Restatement, Missouri law (the law of the state where the injury occurred) should determine the parties' rights and liabilities—that is, unless Indiana unveils a more significant relationship to the issue of limited products liability for failure to warn and defective manufacturing and design.

---

6. *See Perry v. Aggregate Plant Prods. Co.,* 786 S.W.2d 21 (Tex.Ct.App.1990). In ruling on whether Indiana substantive law, including its statute of repose, barred plaintiff's products liability suit against the manufacturer based on defective design and manufacture, the court decided the choice-of-law issue under sections 6 and 145 of the Second Restatement and analyzed the factors as they related to the specific products liability theory asserted against defendant manufacturer. The court noted:

> [S]ince the silo was designed and manufactured in Texas [and] **the cause of action is directed at the design and manufacture of the silo,** ... it seems that Texas is the place where the conduct causing the injury occurred.... The relationship between the parties, if any, must center around **the cause of action which is the "design, manufacture and [sale]" of the silo without proper safeguards.**

*Id.* at 25 (emphasis added).

While *Perry* dealt with only one products liability claim against one defendant manufacturer, the emphasis placed on the specific theory of liability leads us to believe that a Texas court, faced with numerous defendants and products liability claims, would employ the same meticulous dissection of the issues to decide the applicable choice of law. "Products liability" is a melting pot concept under which plaintiffs may assert various theories of liability for intentional torts, negligence, strict liability, and warran-

ty. Analysis of the issues operates to clarify the precise theories of liability asserted in the case. This is a function mandated by Texas choice-of-law rules.

7. Deere originally designed and manufactured the Corn Head in 1974, in Moline, Illinois. On October 28, 1975, Monticello sold the Corn Head to Robert Dahnke in Monticello, Indiana. On October 26, 1985, Dahnke traded the Corn Head to Fields in Lafayette, Indiana. In 1986, Triumph authorized Carter to locate and purchase corn heads for its Massey combines. Carter purchased the Corn Head from Fields for modification and resale to Triumph. The modification included painting the equipment red. A post-accident investigation revealed that the manufacturer's warning decals had been covered by two coats of paint, one green and one red. On or about September 23, 1986, Carter delivered the Corn Head to a Triumph representative on a farm in Kansas. Triumph used the Corn Head on various research test plots in Kansas and other off-site locations, including Texas and Missouri, until the date of the accident.

8. Under the Second Restatement as adopted by the Texas state courts, we must factor into our analysis the place where the Corn Head entered the stream of commerce. *Crisman v. Cooper Indus.,* 748 S.W.2d 273, 277–78 (Tex.Ct.App. 1988).

Deere attempts to undermine the strength of Missouri's contacts by classifying Jaurequi's presence in Missouri as fortuitous. According to Deere, a person's presence is fortuitous absent a showing of prior similar trips to the state. *Allison v. ITE Imperial Corp.*, 928 F.2d 137 (5th Cir.1991). The court in *Allison*, however, did not suggest that a minimum number of trips or a specific length of time was necessary to transform a person's presence within the state from fortuitous to significant. In effect, the opinion distinguishes its facts from the classic "flyover" cases where the plaintiff is injured in transit, rendering the place of injury fortuitous and irrelevant. *E.g., Foster v. United States*, 768 F.2d 1278, 1282 (11th Cir.1985) (location of airplane crash was fortuitous); *Huddy v. Fruehauf Corp.*, 953 F.2d 955, 956–57 (5th Cir.1992) (accident location was fortuitous where professional truck driver was injured en route from Texas to Georgia).

This case has none of the trappings of a "flyover" case. Jaurequi was stationed in Missouri to conduct grain research on one of Triumph's test plots. Had the injury not occurred, Jaurequi would have remained in Missouri for an extended period until his assignment was completed. Triumph routinely plans and directs its employees to perform similar duties in Missouri. Jaurequi's presence can hardly be classified as a "fortuitous ... transversing" of Missouri soil. *Allison*, 928 F.2d at 143 (presence not fortuitous where plaintiff was sent by employer to repair equipment in state and remained in state for five consecutive days until injured); *Wert v. McDonnell Douglas Corp.*, 634 F.Supp. 401, 404 (E.D.Mo.1986) (presence not fortuitous where plaintiff was assigned to training duty at Air Force base in state). Accordingly, the place of injury remains a significant, and moreover, a dominant factor.

Although Indiana does not have quantitatively superior contacts, sheer numbers are not dispositive. *Duncan*, 665 S.W.2d at 421. We must evaluate contacts qualitatively in the context of various governmental policies to determine which state has the closest nexus to the substantive issue. *Id.*[9]

Interstate commerce and consumers need protection from the marketing and sale of dangerously defective products. In this case, Missouri has an interest in regulating not only products manufactured and designed within Missouri, but also businesses that distribute these defective products across state lines into its borders. *Moorhead v. Mitsubishi Aircraft Int'l, Inc.*, 639 F.Supp. 385, 391 (E.D.Tex.1986) (recognizing such an interest for every state where the foreign-manufactured product causes an injury within its borders), *aff'd in part, rev'd in part on other grounds*, 828 F.2d 278 (5th Cir.1987). Missouri, additionally, has an interest in making accessible a forum for victims who have suffered as a result of a business's employment activities performed within its borders. This interest does not diminish merely because the person injured is not a citizen of the state. *See Wert*, 634 F.Supp. at 405. In fact, by not enacting a statute of repose, Missouri has expressed a policy in favor of fully compensating injured victims and a policy against providing asylum to manufacturers of defective products.

We can conceive of no legally cognizable reason why Indiana's legislature should be concerned with the application of its statute to extinguish a foreign resident's claim against a foreign corporation for injuries sustained on foreign soil. Of course, Indiana has an interest in preventing stale claims and promoting certainty of and finality to liability for products within the state's stream of commerce. *Wert*, 634 F.Supp. at 404; *Scalf v. Berkel, Inc.*, 448

---

**9.** Although we proceed on tort choice-of-law principles, we acknowledge that at least one federal court in Texas viewed bars to recovery in tort actions, "independent of fault and causation issues," in a contract context. *E.g., Lee v. Delta Air Lines, Inc.*, 797 F.Supp. 1362, 1371 (N.D.Tex.1992) (applying contract choice-of-law rules to issue of immunity). Under contract choice-of-law rules, the law of the state "where the relationship between the parties has its principal situs normally should govern." *Id.* In this case, the "principal situs" is Missouri where Jaurequi came into contact with Deere's product.

N.E.2d 1201, 1204 (Ind.Ct.App.1983). This interest does not extend into perpetuity in a highly mobile society where a product may find its way into all fifty states through the resale market. *See Wert*, 634 F.Supp. at 404. Neither Texas courts nor this one would apply Indiana law simply because of the "fortuitous" event that a mobile product spent a large part of its functioning life within Indiana. To do so would require a court to over-dilute each state's interest in deterring the production and sale of defective goods within its borders.[10]

The policy of justified expectations also militates against the application of Indiana law. Deere, a Delaware corporation with its principal place of business in Illinois, is seeking to benefit from a statute of repose enacted in Indiana. Deere, a national corporation, cannot argue convincingly that it expected Indiana law to apply to a case arising from a product manufactured in Illinois and involving a foreign citizen simply because this particular Corn Head was sold in Indiana.[11] Nor can Deere persuade anyone that it molded its behavior to conform to the requirements of an Indiana law enacted in 1978, years after Deere chose to build in Illinois instead of Indiana, and three years after it cast the Corn Head into the stream of commerce. Deere can neither claim nor rely on a vested right to limited liability under Indiana's statute of repose.

"[I]t is an established tenet of modern conflicts law that the law of the interested state should apply." *Duncan*, 665 S.W.2d at 422. We find that Missouri has both a quantitatively and qualitatively superior interest in protecting the reasonable expecta-tions of persons injured within its boundaries at the hands of products originally manufactured by an Illinois resident corporation. Accordingly, we hold that Missouri law applies to Jaurequi's products liability claims against Deere. Since Missouri has no statute of repose, the district court's grant of summary judgment is reversed, and we remand the case for further proceedings consistent with this opinion.

MANION, Circuit Judge, dissenting.

The court applies the Restatement (Second) of Conflict of Laws Sections 145 and 146, in holding that the Indiana statute of repose does not bar the plaintiff's claim against Deere. I respectfully dissent. Although Sections 145 and 146 are the appropriate provisions to assess choice of law in a products liability case, another provision of the Restatement, Section 142, specifically governs the choice of law for statutes of limitation. The Texas Supreme Court has adopted the Restatement approach in conflicts analysis, and Section 142 is a part of the overall Restatement approach. Section 142 states initially that "[w]hether a claim will be maintained against the defense of the statute of limitations is determined under the principle stated in § 6."[1] Section 142 proceeds to recite the general rule that "unless exceptional circumstances of the case make such a result unreasonable: (1) The forum will apply its own statute of limitations barring the claim." Under this general rule the statute of repose of Indiana—the forum—bars the plaintiff's claim.

Comment (f) to Section 142 gives the reason underlying the provision: "A state has a substantial interest in preventing the

---

**10.** Although Indiana's statute of repose affords protection to manufacturers "both within and without the [S]tate of Indiana," such extraterritorial application is constitutional only where the state has a significant nexus to the issue, such that its application would be neither "arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981). The case cited by Deere to support extraterritorial application of Indiana's statute of repose in this case is distinguishable. *Bowman v. Niagara Mach. & Tool Works, Inc.*, 832 F.2d 1052 (7th Cir.1987) (application of Indiana's statute of repose to foreign manufacturer was constitutional). In *Bowman*,

the plaintiff was employed and injured in Indiana. *Id.* at 1053.

**11.** Although waived for appeal, we would be more inclined to accept Deere's argument that it expected Illinois's statute of repose to apply to cases arising from products manufactured within Illinois. Ill.Rev.Stat. ch. 110, ¶ 13–213 (1989).

**1.** "Texas courts have traditionally used the term 'limitation' and 'repose' interchangeably, since one purpose of a statute of limitation is to permit repose." *Nelson v. Krusen*, 678 S.W.2d 918, 926 (Tex.1984).

prosecution in its courts of claims which it deems to be stale." Because statutes of limitation are meant to bar suits under state law, whether in federal or state court, we assume that a state's interest in preventing the prosecution of stale claims extends to federal courts sitting in the state applying state law. This case presents a slight twist—it was originally filed in Texas but transferred to Indiana for the convenience of the parties under 28 U.S.C. § 1404. As noted in the court's opinion, this sequence requires that we apply Texas choice of law rules. It does not require, however, that when applying Section 142 we assume Texas to be the forum. Such an application would run contrary to Indiana's interest in preventing the prosecution of stale claims in its courts, including the federal courts sitting in the state.

Comment (f) proceeds to caution that "it is only in the exceptional case that the forum will entertain a claim that is barred by its own statute of limitations." This case is not exceptional. At the time of the district court order which is before us on appeal, this was an ordinary products liability case, where a Spanish citizen sued an Indiana company and an Illinois company for injuries sustained in a farm equipment accident in Missouri. The most significant feature of this case is that it is time-barred under an Indiana statute of repose. This does not in itself thrust this case into the category of exceptional; preclusion of claims under statutes of limitation is a common event in litigation.

For whatever reason, the parties do not raise Section 142 in their briefs. As noted by this court on a different matter (p. 173), if the parties generally raise the choice of law issue, a court is free to apply the correct law, even if the specific legal principles are not properly presented. *See Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1223 (7th Cir.1984). Section 142 is the correct law when applying a Restatement approach to determine choice of law

for a statute of limitation issue. Section 142 requires that Indiana's statute of repose be applied to bar plaintiff's claim.

If as the court posits Texas would not follow Section 142, it would still apply the general rule that because statutes of limitation are procedural, the law of the forum should govern. *California v. Copus*, 158 Tex. 196, 309 S.W.2d 227, 230 (1958), *cert. denied*, 356 U.S. 967, 78 S.Ct. 1006, 2 L.Ed.2d 1074 (1958); *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1111 (5th Cir.1981). An exception to that general rule occurs when statutes of limitation are substantive in nature, as when a particular statute "creates a right and also incorporates a limitation upon the time within which the suit is to be brought...." *Copus*, 309 S.W.2d at 231.[2] That exception would not apply in this case; the statute of repose in question does not create a right. Therefore, even under the analysis advanced in *Copus*, which predates the Restatement approach, Indiana's statute of repose would bar the plaintiff's claim.

---

**2.** In *Ellis*, the Fifth Circuit determined the statute of limitations to be substantive, and applied Section 145 to determine choice of law. Although the court cites *Ellis* as support for applying Section 145 to a statute of limitations, the Fifth Circuit limits this application to cases

where the statute in question is deemed substantive in nature. Notably, the Fifth Circuit in *Ellis* recognized Texas' "general rule that the forum state's statute of limitations governs." 646 F.2d at 1111.