415 F.Supp. 206 (1976)
In re AIR CRASH DISASTER AT BOSTON, MASSACHUSETTS JULY 31, 1973.
Frances A. BURRELL, Individually and as Executrix under the Will of Joseph E. Burrell
v.
DELTA AIR LINES, INC., et al.
MDL No. 160-49, Civ. A. No. 74-4399-C.
United States District Court, D. Massachusetts.
June 4, 1976.
*207 Michael B. Latti, Kaplan, Latti & Flannery, Boston, Mass., Morrow Bennett, Hamilton, Douglas & Bennett, P. A., Tampa, Fla., for plaintiff.
Condon & Forsyth, New York City, for Delta.
Walton, Lantaff, Schroeder, Carson & Wahl, Miami, Fla., for McDonnell Douglas.
Smathers & Thompson, Miami, Fla., for Kollsman Instr. Corp.

OPINION
CAFFREY, Chief Judge.
This is a civil action brought by Frances A. Burrell, executrix under the will of Joseph E. Burrell, against Delta Air Lines, Inc. (Delta), McDonnell Douglas Corp., Sperry Rand Corp., and Kollsman Instrument Corp. Plaintiff seeks recovery herein for the death of Joseph E. Burrell sustained in the crash of a DC-9 aircraft at Boston's Logan Airport on July 31, 1973. When the complaint was filed, plaintiff was a resident of the State of Florida and the Estate of Joseph E. Burrell is being probated in the Broward Probate Court, State of Florida. Defendant Delta is a corporation organized under the laws of the State of Delaware with a principal place of business in the State of Georgia. It also does business within, and is subject to the jurisdiction of the State of Florida.
The instant case was filed in the United States District Court for the Southern District of Florida, Miami Division on the basis of that court's diversity jurisdiction.
The case was transferred to this District by the Judicial Panel on Multidistrict Litigation, for consolidated and coordinated pre-trial proceedings, pursuant to the provisions of 28 U.S.C.A., § 1407.
Thereafter defendant Delta filed a motion for summary judgment in which Delta argues that Mr. Burrell was not aboard Delta Flight 723 as a passenger, but that he was aboard in his capacity as a Delta employee undergoing training in order to qualify as a first officer on a DC-9. Delta alleges that because of the claimed employee-in-training status of Mr. Burrell, his rights are only those conferred upon him by the Florida Workmen's Compensation Act, Fla.Stat.Ann. § 440.11, which precludes an employee from bringing an action in tort for negligence against his employer.
Delta's motion for summary judgment is supported by the affidavits of Jack Birchall, Herbert Farnsworth, William Cardno, Frank McDermott and Raymond Belair, by the deposition of Carey Smith, memoranda of S. L. Leffingwell, Herlong Averett, Carey Smith, B. J. Payne and William Cardno, plus answers to interrogatories and responses to requests for admissions. The plaintiff opposes Delta's motion and has filed a motion for partial summary judgment supported by her own affidavit and deposition, the depositions of Captains Farnsworth, Birchall, Averett and Smith, the affidavits of her attorneys, and flight training records and internal memoranda of Delta employees who were involved with Mr. Burrell's training.
The above-listed documents establish that the following facts are without dispute between the parties:
The decedent, Joseph E. Burrell, prior to the merger between Northeast Air Lines and Delta Air Lines, was employed by Northeast Air Lines for several years as a pilot with the rank of captain. In 1963 he began to experience physical difficulties which culminated in a medical diagnosis that he was suffering from Parkinson's Disease. He was granted a medical leave of absence from Northeast effective June 27, *208 1967. In 1969 he began undergoing treatment of his condition with a new drug called L-Dopa. Considerable improvement resulted from this treatment and he was virtually symptom-free in 1972 at which time he applied to the FAA for the issuance of first and second class airman medical certificates. His application was originally denied by the agency but that decision was reversed by an Administrative Law Judge whose ruling was upheld by the National Transportation Safety Board (NTSB) in an opinion handed down on March 21, 1973. He received a medical certificate with no limitations on April 19, 1973.
Mr. Burrell then applied to Delta for full-time employment, because Delta, as indicated above, had merged with Northeast during his absence. He began active employment with Delta as a first officer on May 27, 1973. Because Delta made extensive use of the DC-9 aircraft, on which he had not qualified while employed as a Northeast captain, Delta assigned him to a training course in order that he might become qualified as a copilot and eventually a pilot on the DC-9. The Delta training program consists of three separate phases: (1) ground training, (2) simulator training, and (3) flight training.
Mr. Burrell began ground school training at Atlanta, Georgia on May 28, 1973. On his first attempt he did not successfully complete the written examination which was a part thereof. However, he subsequently passed the ground school written examination about June 22, 1973.
On June 24, 1974 Mr. Burrell began the simulator training program. He did not successfully pass the simulator course. On July 3, 1973 the Systems Manager, Herlong Averett, wrote a letter to his supervisor, C. A. Smith, Vice President of Flight Operations, which advised:
"[Mr. Burrell] has received the programmed number of hours of instruction as prescribed for initial DC-9 Simulator Course. At this time, First Officer Burrell has not achieved the level of proficiency required to complete the simulator portion of the proficiency check. He will require additional training to complete this portion of his training."
Captain Averett's deposition establishes that additional simulator training was approved for Mr. Burrell but that he was largely inactive between June 27 and July 19, 1973, apparently because other people were using up available simulator equipment time.
During the period July 19 through July 23, 1973, Mr. Burrell went through the simulator course again. At the end of the second set of simulator sessions, S. L. Leffingwell, the DC-9 Program Manager, wrote a memorandum to the file in which he stated:
"[Mr. Burrell] has not demonstrated significant progress toward and is not capable of, satisfactorily completing a DC-9 First Officer Proficiency Check . .. [B]ecause of the fundamental difficulties he [Mr. Burrell] is experiencing, even at this late phase of training, I do not feel that further training, at least along conventional lines, is in the best interest of the company." (emphasis added)
On July 23, 1973 Captain Averett sent a memorandum to Captain Smith stating in part:
"Mr. Burrell's performance is deficient to the extent that we cannot forecast a time in the future when his proficiency level would be commensurate with the line requirements. I am returning him to his base manager for further disposition."
The foregoing chronology covers the time period up to 7 days before the fatal flight. The affidavits of Captains Birchall and Farnsworth establish that Captain George Berg, a representative of the Air Line Pilots Association (ALPA), requested that they accompany him and Mr. Burrell to a meeting with Captain Smith on July 27 for the purpose of discussing "the status of the initial DC-9 copilot flight training for Mr. Joseph Burrell." The Farnsworth affidavit states that at the meeting Mr. Burrell complained of the difficulty he was encountering with the simulator sessions and that Mr. Burrell requested a temporary interruption of the simulator sessions so that he could *209 observe line operation aboard a DC-9 in actual service. Both the Birchall and Farnsworth affidavits state that Captain Smith acquiesced to Mr. Burrell's request to fly as an extra crew member on a DC-9 aircraft.
Both affidavits establish unequivocally that Captain Smith authorized, in Mr. Burrell's case, a departure from Delta's conventional training program. Captain Smith approved a plan which contemplated Mr. Burrell flying as an observer in the cockpit of a DC-9, as requested by him, and thereafter resuming the conventional training program and utilizing the DC-9 simulator and then a training aircraft.
The deposition of Captain Smith states that he attended the meeting on July 27, 1973 with Captains Birchall and Farnsworth and Mr. Burrell, and that the meeting was initiated by a request by Captains Birchall and Farnsworth. It further establishes that the group discussed Mr. Burrell's training situation and that Captain Smith authorized line observations and additional simulator time for Mr. Burrell. The Smith deposition also establishes that he instructed Mr. Burrell not to participate in conducting actual flights but only to observe from the jumpseat in the cockpit. That this instruction was given is corroborated by the depositions of Captains Birchall and Farnsworth.
Captain Smith's deposition further establishes that he authorized a check out flight for Mr. Burrell on either July 28 or 29, 1973 for the purpose of evaluating Mr. Burrell's performance as a copilot on a DC-9 in flight. The fact that such a flight was made on July 29, 1973 by Mr. Burrell is established by a memorandum of Captain B. J. Payne dated July 30, 1973.
The affidavit of William Cardno establishes that Delta personnel records carried Mr. Burrell as a full-time employee from May 27 through July 31, 1973. That affidavit also stated that Mr. Burrell was assigned to Delta Flight 723 on July 31, 1973 as a First Officer Trainee  Cockpit Observer.
Further highly significant evidence as to the nature and purpose of Mr. Burrell's presence aboard Flight 723 and, more particularly, his presence in the cockpit is provided by the cockpit voice recorder salvaged from the crash of the aircraft.
The affidavit of Frank McDermott sets out in detail a full transcript of the internal cockpit conversations and transmissions during that period of time immediately prior to Delta 723's takeoff from the Manchester, New Hampshire airport. The Court has listened to the tapes and has determined that the transcript made by Mr. McDermott is a complete and accurate record. I find that all conversations transcribed were of a purely operational nature. Captain Streil, the captain-in-command, engaged in what amounted to a running explanation to Mr. Burrell of a great many things to be done prior to takeoff by the crew of a DC-9. Only technical operations of the aircraft were discussed and nothing even remotely construable as personal conversation occurred. The conversation between Captain Streil and Mr. Burrell can fairly be characterized as being exclusively a tutorial by Captain Streil in the operation of a DC-9. Mr. Burrell's participation therein demonstrated an attitude on his part to learn as much as possible about those operations. While there is no contention to the contrary, the transcript of the cockpit voice recorder also establishes that Mr. Burrell was in fact occupying the jumpseat in the cockpit at all times material hereto.
Plaintiff resists the allowance of defendant's motion for summary judgment and urges the allowance of her motion for partial summary judgment by relying principally on her own affidavit, supplemented by memoranda of law. Mrs. Burrell's affidavit establishes the fact that her husband, at the time of the accident, did not own a Delta pilot's uniform and that while in the cockpit of Delta Flight 723 he was attired in informal civilian clothes. The remainder of her affidavit consists largely of indirect quotation of conversations between her husband and various Delta officials, which she *210 says her husband recited to her shortly before his death. These statements are tendered as admissible under M.G.L.A. c. 233, § 65, which in pertinent part states:
"In any action or other civil judicial proceeding, a declaration of a deceased person shall not be inadmissible in evidence as hearsay . . . if the court finds that it was made in good faith and upon the personal knowledge of the declarant."
This statute does not render admissible the statements in plaintiff's affidavit. For example, the statement attributed to Captain Willard is excludable on two grounds. First, the statement was not that of the deceased. Second, the statement of Captain Willard's belief as to the intentions of Delta toward the deceased was gleaned from what was told Willard by other Delta officials. Captain Willard in turn told Mr. Burrell, who then told Mrs. Burrell. Captain Willard's statement is therefore more than simple hearsay; it is at least double hearsay, which the statute does not make admissible and to which plaintiff is not competent to testify. The same reasoning applies to statements allegedly made by Delta instructors to the deceased and then repeated to Mrs. Burrell by the deceased.
It further should be noted that portions of Mrs. Burrell's affidavit describe the desire of the deceased to fly in the cockpit with Captain Streil in particular and his general motivation for being present in the cockpit. Assuming without deciding that those portions of the affidavit would be admissible over a hearsay objection, they are barely relevant, if at all, to the central issue of this case: whether Mr. Burrell was granted permission to be aboard Delta Flight 723 for purely personal purposes or wholly or in part in order to pursue the training program which was tailored especially to his needs. More importantly, when Mrs. Burrell's affidavit is read in conjunction with all the other submissions discussed above, the only possible and inescapable inference is that Mr. Burrell was aboard Delta Flight 723 for specialized flight training. Nothing in Mrs. Burrell's affidavit would warrant or justify the denial of a motion for directed verdict for the defendant.
Similarly, Mrs. Burrell's deposition fails to raise a genuine issue of fact as to whether or not Mr. Burrell was engaged in flight training while in the cockpit of Flight 723. Her deposition testimony as to conversations between Captain Streil and the deceased before the flight in question, which are offered primarily for Captain Streil's opinions, would fail to qualify for admission into evidence under M.G.L.A. c. 233, § 65. In short, as with plaintiff's affidavit, there is no evidence in plaintiff's deposition which, if offered at trial, would prevent the entry of a directed verdict for the defendant.
It is well established that under the law of Florida, which I rule governs the rights of the parties in this case, plaintiff may prevail only by establishing by a preponderance of the evidence that the deceased was aboard Delta Flight 723 for purely personal reasons. The leading case is Cook v. Highway Casualty Co., 82 So.2d 679 (Fla.1955). In that case the Florida Supreme Court ruled as follows (at 682):
"We are persuaded that the decisions of those courts which do not require the Commission to weigh the business and personal motives and determine which is the dominant or compelling cause of the trip, are more consistent with the remedial purposes of our workmen's compensation act than is the more stringent rule of Marks' Dependents v. Gray, [251 N.Y. 90, 167 N.E. 181] supra, and we agree with the Mississippi court that `no nice inquiry will be made to determine the relative importance' of concurrent business and personal motive. Brookhaven Steam Laundry v. Watts, [214 Miss. 569, 55 So.2d 381, 59 So.2d 294] supra. So long as the business purpose is `at least a concurrent cause of the trip', Barragar v. Industrial Commission, [205 Wis. 550, 238 N.W. 368, 78 A.L.R. 679] supra, the employer may be held liable for workmen's compensation."
*211 Under the quoted language, I rule that Florida law has determined that if a business purpose is at least a concurrent cause of taking the trip the employee is eligible for workmen's compensation and, consequently, ineligible to maintain an action in tort for negligence.
Thus, the burden on Delta, in moving for dismissal, is to show that Mr. Burrell's presence was at least in part for a business purpose, and the plaintiff's burden to carry her motion is to establish that his presence was purely personal and not for business purposes in whole or in part. In support of her motion for partial summary judgment, plaintiff has submitted nothing of an evidentiary nature other than her own affidavit. Plaintiff's affidavit contains assertions of fact which can be characterized as double hearsay. This double hearsay relates to facts which are either irrelevant to the precise issues raised by these cross-motions, or facts to which the plaintiff is incompetent to testify. Counsel for the plaintiff has not called this Court's attention to any testimony in plaintiff's affidavit which would supply a basis for a jury's reasonable inference that decedent was aboard Delta Flight 723 solely for personal reasons.
In fact, the evidence adduced herein is so overwhelmingly in support of the finding of fact that decedent was aboard this flight as a part of his training as to render unreasonable and impermissible the drawing of any other inference or conclusion. The evidence establishes unequivocally that his entire raison d' etre was further training toward his goal of qualifying as a DC-9 copilot. I have in mind, in particular, the entire history of Mr. Burrell's battle with Parkinson's Disease; Mr. Burrell's persistence in the face of frustration and initial failure in the ground training and simulator phases of his training; Mr. Burrell's request to ride in the jumpseat of a DC-9 in line operation; the permission granted by Captain Smith to Mr. Burrell to ride in a DC-9 cockpit with Captain Streil and Captain Smith's accompanying admonitions; the permission granted by Captain Smith to allow Mr. Burrell a check out ride in a DC-9 prior to line observation and the report of Mr. Burrell's efforts on that ride on July 29, 1973; and, finally, the transcript of the conversation between Captain Streil and Mr. Burrell on board Delta 723 before takeoff from Manchester, which contains only discussions of pilot responsibilities in going through pre-takeoff check list, setting up air conditioners, swapping engines around and setting flaps and slats.
There is no doubt that if the submissions made in support of defendant's motion were made in the course of a civil jury trial, this Court, applying Florida law, would be required to direct a verdict for defendant Delta. Cook v. Highway Casualty Co., supra. This case does not and could not present a record from which a jury would have the option of selecting from either of two competing permissible inferences. Cf., Galloway v. United States, 319 U.S. 372, 395-96, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943). As the Court would be required to direct a verdict for the defendant at trial on the undisputed facts developed in the submissions before the Court, summary judgment for defendant is appropriate now. Sartor v. Arkansas Natural Gas Co., 321 U.S. 620, 624, 64 S.Ct. 724, 88 L.Ed. 967 (1943); United States v. J. B. Williams Co., 498 F.2d 414, 432 (2 Cir. 1974); Feldman v. Birger, 205 F.Supp. 87, 88 (D.Mass.1962), 6 Moore, Federal Practice 56.11[3], 56-243 n. 33 (1976).
Accordingly, an order will be entered allowing defendant Delta's motion for summary judgment and denying plaintiff's motion for partial summary judgment.