**Winston LEE, Individually and on Behalf of the Estate of Alyson Lee, et al, Plaintiffs,**

v.

**DELTA AIR LINES, INC., et al, Defendants.**

**Nos. 4:87–CV–097–A, 4:92–CV–245–A and 4:92–CV–251–A.**

United States District Court,
N.D. Texas,
Fort Worth Division.

July 21, 1992.

Windle Turley, Law Office of Windle Turley, P.C., Dallas, Tex., for Winston Lee.

John Harris Martin, Thompson & Knight, Dallas, Tex., for Delta Air Lines, Inc.

J. Carlisle Dehay, Jr., Dehay & Blanchard, Dallas, Tex., for Ron Allen, C. A. Smith, Harry Alger and James Kater.

Kathlynn G. Fadely, Dept. of Justice, Torts Branch, Civil Div., Washington, D.C., for U.S.

## MEMORANDUM OPINION and ORDER

McBRYDE, District Judge.

Came on to be considered (i) the motion of defendant Delta Air Lines, Inc., (hereinafter "Delta") for reconsideration of the order signed by the court November 12, 1987, denying Delta's motion for summary judgment, and (ii) the motion of plaintiff Winston Lee, individually and on behalf of the estate of Alyson Lee, (hereinafter "plaintiff") for partial summary judgment against Delta. After a thorough review of Delta's motion for reconsideration, Delta's motion for summary judgment, plaintiff's motion, all related responses and replies, and all other matters proper to be considered in connection with the motions, the court has concluded that its November 12, 1987, order should be set aside, that Delta's motion for summary judgment should be granted, and that plaintiff's motion should be denied.

### I.

#### Plaintiff's Action Against Delta

Plaintiff's action against Delta grows out of a commercial airliner crash that occurred August 2, 1985, at the Dallas/Fort Worth Airport. Mr. Lee alleges that his wife, Alyson Lee, was a flight attendant working aboard the airliner, which was being operated by Delta, and that she died as a result of the crash. He seeks recovery from Delta of actual damages based on Delta's alleged negligence in causing the crash. His alleged actual damages are destruction of the "loving relationship" between him and his wife, pecuniary loss as a result of his wife's death, and grief and mental anguish resulting from his wife's death. As the representative of his deceased wife's estate, he claims damages for physical pain, mental anguish, and terror suffered by his wife before her death, and expenses incurred associated with her funeral and last rites.

Mr. Lee alleges that his wife's death was caused by willful acts and omissions, or gross negligence, of Delta, and that, as a consequence, he is entitled to recover exemplary damages.

Subject matter jurisdiction is based on diversity of citizenship and amount in controversy.

### II.

#### Delta's Motion for Summary Judgment

In September 1987, Delta moved for summary judgment on the ground "that Florida law governs Plaintiff's claim and that the Florida Workers' Compensation Law is Plaintiff's exclusive remedy...." Defendant's Motion for Summary Judgment at 3. Plaintiff responded with his contention "that Texas law governs the liability and damage issues which remain undecided in this case, and that the submission of those issues is not preempted by the Florida Worker's [sic] Compensation Law." Plaintiff's Response to Defendant Delta Air Lines' Motion for Summary Judgment at 2. Plaintiff does not take issue with any of the facts upon which Delta bases its motion.

By order signed November 12, 1987, the court denied Delta's motion for summary judgment, having reached the conclusions that Texas law governs plaintiff's claims and that enforcement of the exclusive remedy provision of the workers' compensation laws of Florida would be against the public policy of Texas and, therefore, would not be enforced by Texas courts.

## III.

### *The Motion for Reconsideration*

In April 1989 Delta filed a motion asking the court to reconsider its November 1987 rulings. Delta calls the court's attention to a section of *Restatement (Second) of Conflict of Laws* (hereinafter *"Restatement"*) that states a choice-of-law principle dealing directly with the issue raised by the motion for summary judgment. Section 184 of the *Restatement* reads as follows:

> § 184. Abolition of Right of Action for Tort or Wrongful Death
>
> Recovery for tort or wrongful death will not be permitted in any state if the defendant is declared immune from such liability by the workmen's compensation statute of a state under which the defendant is required to provide insurance against the particular risk and under which
>
> (a) the plaintiff has obtained an award for the injury, or
>
> (b) the plaintiff could obtain an award for the injury, if this is the state (1) where the injury occurred, or (2) where employment is principally located, or (3) where the employer supervised the employee's activities from a place of business in the state, or (4) whose local law governs the contract of employment under the rules of §§ 187–188 and 196.

Plaintiff responded to Delta's reliance on § 184 by his contentions that (i) it is not applicable because Winston Lee, individually, did not obtain an award for his wife's injury and Delta has not established without dispute that plaintiff is entitled to recover under the workers' compensation laws of Florida, and (ii) public policy of Texas would cause Texas courts not to apply the exclusive remedy provision of the workers' compensation laws of Florida. Plaintiff attached to his response an unverified and unsigned copy of what appears to be a completed Florida workers' compensation form that suggests that the entire claim (presumably of Winston Lee) was being denied on the issue of compensability and that the reason why the claim was being controverted was that "[t]here are no dependents who are substantially dependent upon claimant" (presumably having reference to Alyson Lee). Plaintiff's Response to Defendant's Motion for Reconsideration and Summary Judgment and Brief in Support, ex. "A." The instrument goes on to state that "[f]uneral benefits will be paid." *Id.*

## IV.

### *Undisputed Facts that are Pertinent to Delta's Motion for Summary Judgment*

The summary judgment record establishes the following facts without dispute: Winston Lee and Alyson Lee were husband and wife at the time of her death. Winston Lee has resided in the State of Florida since 1980. His wife, Alyson, resided there from 1980 until the time of her death. She had been employed by Delta as a Florida based flight attendant since 1978. At the time of the crash, she was working on the airliner in her capacity as a flight attendant for Delta. Her death resulted from injuries arising out of and in the course of her employment for Delta. Throughout her employment with Delta, Alyson Lee's supervisors were always based in Florida and she received all of her work assignments from Delta personnel located in Florida. In her work for Delta, Alyson Lee regularly departed from and returned to Florida. Before the date of the crash, and continuing through the date of the filing by Delta of its motion for summary judgment, Delta had secured payment of compensation for its Florida employees in accordance with the terms and requirements of the workers' compensation laws of Florida. After his wife's death, Winston Lee filed a claim under the workers' compensation laws of Florida for benefits related to the death of his wife.

Plaintiff does not dispute that, at the time of Alyson Lee's death, she was covered by workers' compensation benefits that Delta provided to its Florida employees under Florida law. At all pertinent times Delta was an "employer", and Alyson Lee was an "employee", as those words are defined in the workers' compensation laws

of Florida. There does not appear to be a genuine dispute that plaintiff could have obtained under Florida workers' compensation law at least an award for funeral benefits related to his wife's funeral.

The flight that terminated in the crash departed Fort Lauderdale, Florida, the afternoon of the day of the crash. The crash occurred in Texas. Delta is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Georgia.

## V.

*Pertinent Parts of the Workers' Compensation Laws of Florida and Related Florida Case Law*

At all relevant times, Florida has had a comprehensive workers' compensation scheme. *See* Workers' Compensation Law, Fla.Stat.Ann. §§ 440.01–440.60 (West 1981 & Supp.1986) (hereinafter "Florida Act").

The pertinent part of the basic coverage language of the Florida Act reads as follows:

Compensation shall be payable under this chapter in respect of disability or death of an employee if the disability or death results from an injury arising out of and in the course of employment.... Where an accident happens while the employee is employed elsewhere than in this state, which would entitle him or his dependents to compensation if it had happened in this state, the employee or his dependents shall be entitled to compensation if the contract of employment was made in this state, or the employment was principally localized in this state....

*Id.* at § 440.09(1).[1] Inasmuch as Alyson Lee resided in Florida, she and her supervisors were based in Florida, and she received her assignments in, and she regularly departed from and returned to, Florida, her employment was "principally localized in" Florida, with the result that she and her dependents were entitled to compensation under the Florida Act even though the

crash causing her death happened while she was employed elsewhere than in the State of Florida.

The word "employee", as used in the Florida Act, is defined to include "every person engaged in any employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written, including aliens and also including minors, whether lawfully or unlawfully employed." *Id.* at § 440.02(11)(a). Thus, Alyson Lee was an "employee" under the Florida Act. Delta was the "employer" of Alyson Lee under the Florida Act, which defines the word "employer" to include "every person carrying on any employment...." *Id.* at § 440.02(12). Every "employer" and "employee" are bound by the provisions of the Florida Act. *Id.* at § 440.03.

The Florida Act requires that "[e]very employer coming within the provisions of [the Florida Act] shall be liable for, and shall secure, the payment to his employees ... of the compensation payable under §§ 440.13, 440.15 and 440.16", *id.* at § 440.-10(1), which is to be paid by the employer to the employee "irrespective of fault as a cause for the injury ..." *Id.* at § 440.-10(2).

Sections 440.13, 440.15, and 440.16 of the Florida Act provide for payment to injured employees and their survivors of benefits related to injury or death occurring in the course and scope of employment. The benefits include, as to an employee whose death results from an accident, actual funeral expenses up to $2,500.00, *id.* at § 440.16(1)(a), and compensation to a surviving spouse who was dependent on the deceased employee. *Id.* at § 440.16(1)(b).

The Florida Act limits the compensation that an employee's survivors may obtain from the employer for "an injury arising out of and in the course of employment" exclusively to that provided by the Florida Act. *Id.* §§ 440.09, 440.11. In pertinent part, § 440.11 of the Florida Act provides:

---

1. References to the Florida workers' compensation laws are to the versions existing at, and before, the time of the crash of the airliner.

The liability of an employer prescribed in § 440.10 *shall be exclusive and in place of all other liability of such employer* to any third party-tortfeasor and to the employee, the legal representative thereof, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law ... on account of such injury or death....

*Id.* at § 440.11(1) (emphasis added).

In *Mullarkey v. Florida Feed Mills, Inc.*, the Florida Supreme Court explained the basic policy underlying the Florida Act:

[I]t [is] fully within the power of the [Florida] Legislature to provide for a Workmen's Compensation system which supersedes other legislation affecting compensation or relief after death or injury. Distribution of the inevitable costs of industrialism on a rational basis is within the interests of the citizens of [Florida]. General welfare costs are reduced to the extent that compensation keeps the injured and his dependents from the public dole. Protracted litigation is superseded by an expeditious system of recovery.

268 So.2d 363, 366 (Fla.1972).

■ The Florida courts have held that the exclusive remedy language of § 440.11 of the Florida Act means exactly what it says. *See Employers Insurance of Wausau v. Abernathy*, 442 So.2d 953 (Fla.1983); *Poling v. Petroleum Carrier Corp.*, 194 So.2d 925 (Fla.Dist.Ct.App. [1st Dist.] 1967). The exclusive remedy provision extends to claims based on damages caused by willful and wanton conduct of the employer. *See Seaboard Coast Line R.R. v. Smith*, 359 So.2d 427, 430 (Fla.1978). The *quid pro quo* was explained in *Mullarkey:*

In return for accepting vicarious liability for all work-related injuries regardless of fault, and surrendering his traditional defenses and superior resources for litigation, the employer is allowed to treat compensation as a routine cost of doing business, which can be budgeted for without fear of any substantial adverse tort judgments. Similarly, the employee trades his tort remedies for a system of compensation without contest, thus sparing him the cost, delay and uncertainty of a claim in litigation.

268 So.2d at 366.

According to the Florida Supreme Court, the very existence of the Florida Act provides notice of its provisions to both the employer and employee, and the reciprocal rights and duties between the employer and employee as provided in the Florida Act constitute a voluntary contract between them—thus, the Florida Act is considered a part of the contract of employment of Florida "employees." *Hyatt v. Armstrong Cork Co.*, 121 So.2d 793, 796 (Fla.1960); *Fink v. Fink*, 64 So.2d 770, 771 (Fla.1953).

When the Florida Act is applied to the undisputed facts of this case, the conclusion follows that, if it is given effect in this action, plaintiff, as Alyson Lee's surviving spouse and legal representative, has no remedy against Delta for damages resulting from her death other than the remedies that are provided by the Florida Act.

## VI.

*Texas Choice-of-Law Rules Require that the Florida Act be Given Effect*

A. Texas Choice-of-Law Rules:

■ This court is obligated to apply in this diversity action the choice-of-law rules of Texas. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). As the court noted in its November 12, 1987, order, Texas courts generally apply the *Restatement*'s "most significant relationship" test. The most significant relationship methodology was adopted by the Texas Supreme Court for tort choice-of-law issues in *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex.1979), and for all other choice-of-law issues, with limited exceptions not applicable here, in *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984). Applying this methodology, once the court has identified the state contacts that should be considered, the question of which state's law will apply then

becomes an issue of law. *Duncan*, 665 S.W.2d at 421.

## B. The Choice of Law is to be Made on an Issue-by-Issue Basis:

The court has decided that it applied the choice-of-law rules too broadly when reaching the conclusion, expressed in its November 12, 1987, order, that Texas law governs plaintiff's claim. Texas choice-of-law principles indicate that the court should separate out, and consider on somewhat an isolated basis, the question of whether the exclusive remedy provision of the Florida Act should be enforced in this case, without regard to whether Texas law would govern other issues, such as fault and causation, related to the crash.[2] *Gutierrez* and *Duncan* make clear that the choice-of-law search must be done on an issue by issue basis. In *Gutierrez*, the Texas Supreme Court said:

Section 6 sets out the general principles by which the more specific rules are to be applied. It states:

§ 6.   Choice-of-Law Principles

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of *the particular issue,*

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of the law to be applied."

Section 145 lists factual matters to be considered when applying the principles of Section 6 to a tort case:

"§ 145.   The General Principle

"(1) The rights and liabilities of the parties with respect to *an issue* in tort are determined by the local law of the state which, with respect to *that issue*, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to *an issue* include:

"(a) the place where the injury occurred,

"(b) the place where the conduct causing the injury occurred,

"(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

"(d) the place where the relationship, if any, between the parties is centered.

"These contacts are to be evaluated according to their relative importance with respect to *the particular issue.*"

583 S.W.2d at 318–19 (emphasis added).

In *Duncan*, the Texas Supreme Court explained:

By contrast, use of the most significant relationship approach in accordance with the general principles stated in § 6 produces reasoned choice of law decisions grounded in those specific governmental policies relevant to *the particular substantive issue.* Consequently, the *lex loci* rules will no longer be used in this state to resolve conflicts problems. Instead, in all choice of law cases, except those contract cases in which the parties

---

**2.** By memorandum opinion and separate order signed by the court September 22, 1986, the court determined that the law of Texas governs the issue of liability, including punitive damages, of all defendants in cases growing out of the airliner crash in question. *In re: Air Crash at Dallas/Fort Worth Airport on August 2, 1985,*

MDL Docket No. 657, memorandum opinion signed September 22, 1986, and order signed September 22, 1986. The September 22, 1986, memorandum opinion and order do not deal with the particular substantive issue with which the court is dealing in this memorandum opinion and order.

have agreed to a valid choice of law clause, the law of the state with the most significant relationship *to the particular substantive issue* will be applied to resolve *that issue.*

.... Some contacts are more important than others because they implicate state policies underlying *the particular substantive issue.*

665 S.W.2d at 421 (emphasis added).

## C. The "Particular Substantive Issue" in this Action:

The substantive issue presented to the court by Delta's motion for summary judgment is whether plaintiff is precluded from pursuing this action by virtue of the exclusive remedy feature of the Florida Act. That is the "particular substantive issue" within the meaning of *Duncan* and "the particular issue" within the meaning of §§ 6 and 145 of the *Restatement.*

*Duncan* instructs that "we must first identify the state contacts that should be considered." 665 S.W.2d at 421. The relevant and material contacts in this action are those set forth above under the heading "Undisputed Facts that are Pertinent to Delta's Motion for Summary Judgment." The court has concluded that the contacts with Florida in respect to the particular substantive issue in question so outweigh in significance the contacts that are potentially relevant to that issue with Texas (the place of the crash and perhaps the place of causative fault), Delaware (the state of incorporation) or Georgia (principal place of business of Delta) that the Florida Act should control the issue. The employee affected by the Florida Act and her survivor were domiciled in Florida, and the principal situs of the employment relationship between Delta and its employee was in Florida. Florida has a keen interest in causing the employment relationships between its domiciliaries and their respective employers in Florida to be strictly governed by the Florida Act. In contrast, Texas, Delaware, and Georgia each has, at most, only a slight interest in the Florida employment relationship or its consequences.

## D. Application of Section 6's Relevant Factors to Facts of This Action:

In *Gutierrez,* the Texas Supreme Court expressed the view that the conflict-of-law approach taken in the *Restatement* is a "rational yet flexible approach to conflicts problems." 583 S.W.2d at 318. The Texas court adopted § 6 of the *Restatement* as a statement of the general principles by which the more specific rules are to be applied. When § 6's "contacts to be taken into account" are considered, they all point to Florida local law for resolution of the "particular issue":

(a) The interstate system has a need for each state to recognize, and give effect, to the consequences of employment relationships of each sister state; otherwise, the employers and employees of each state would experience inappropriate uncertainty concerning their rights in relation to each other any time one of them might choose to institute an action against the other in a court of a state other than the state of the principal place of employment. Apropos is the comment on § 6:

> d. *Needs of the interstate and international systems.* Probably the most important function of choice-of-law rules is to make the interstate and international systems work well. Choice-of-law rules, among other things, should seek to further harmonious relations between states and to facilitate commercial intercourse between them. In formulating rules of choice of law, a state should have regard for the needs and policies of other states and of the community of states. Rules of choice of law formulated with regard for such needs and policies are likely to commend themselves to other states and to be adopted by these states. Adoption of the same choice-of-law rules by many states will further the needs of the interstate and international systems and likewise the values of certainty, predictability and uniformity of result.

*Restatement* § 6 cmt. d. Each state has an interest in having sister states honor the expectations of its employers and employees; and, those expectations are more like-

ly to be honored if all states uniformly look to the law of the state of employment for a definition of the rights between the employers and employees of that state.

■ (b) Furthermore, Texas policy generally favors exclusivity of remedy in a workers' compensation context. All damages sought by plaintiff in this action except exemplary damages would be denied under Texas law if the workers' compensation coverage had been provided under Texas law. *See* Tex.Rev.Civ.Stat.Ann. art. 8306, §§ 3 & 5 (repealed) (Vernon 1967) and art. 8308–4.01 (Vernon Supp.1992). The only possible divergence in the policies of Florida and Texas, respectively, on the issue of exclusiveness of the remedy has to do with the policy evidenced by the Texas statutory and constitutional law that, notwithstanding the exclusive remedy provisions of the Texas workers' compensation law, the survivors of a deceased employee are not denied the recovery of exemplary damages if the death is caused by willful act or omission or gross negligence of the employer. *See* Tex.Rev.Civ.Stat.Ann. art. 8306, § 5 (repealed) (Vernon 1967) and art. 8308–4.01 (Vernon Supp.1992); Tex. Const. art. XIV, § 26. However, that Texas policy does not outweigh the reasons why the Florida Act should apply to plaintiff's claims against Delta. The test to be applied to determine whether a Texas court will refuse for policy reasons to enforce a right arising under the law of another jurisdiction was expressed by the Texas Supreme Court in 1967 as follows:

> The test for refusing to enforce a right lawfully arising in another jurisdiction has been stated in this manner: "To justify a court in refusing to enforce a right of action which accrued under the laws of another state, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that for some other reason the enforcement of it would be prejudicial to the general interests of our own citizens." [3]

*Castilleja v. Camero*, 414 S.W.2d 424, 427 (Tex.1967) (citations omitted). The ongoing vitality of this test is shown by its application, in an abbreviated form, by the Texas Supreme Court in *Gutierrez:*

> Finally, there is the question of public policy. Texas courts will not enforce a foreign law that violates good morals, natural justice or is prejudicial to the general interests of our own citizens.

583 S.W.2d at 321 (citation omitted).

■ Enforcement of the exclusive remedy feature of the Florida Act is not contrary to good morals or natural justice. Nor is there any other reason why its enforcement would be significantly prejudicial to the general interests of the citizens of the State of Texas. While the purpose of exemplary damages is to deter the wrongdoer and others from the commission of similar wrongs, *see Bridges v. Phillips Petroleum Co.*, 733 F.2d 1153, 1156 (5th Cir.1984), *cert. denied*, 469 U.S. 1163, 105 S.Ct. 921, 83 L.Ed.2d 933 (1985), the effect of applying the exclusive remedy provision of the Florida Act to plaintiff's claims against Delta in this action would not in a significant way dilute the goal of deterrence. It is highly unlikely that the personnel of Delta who were responsible for the operation and safety of the airliner in question allowed the safety of the airliner and the scores of persons on the airliner to be compromised because of the immunity of Delta from liability for exemplary damages to Alyson Lee or Winston Lee in the event of a crash of the airliner or that a grant to Delta in this action of immunity from a damage claim by plaintiff will have the slightest impact on future safety practices. Viewing the matter realistically, in a case such as this there is no reasonable basis for a conclusion that Texas policy will be compromised in any respect by honoring the policy of a sister state that, where there is an employer-employee relationship centered in that state and the employer has provided workers' compensation coverage, the survivors of the employee do not have a

---

**3.** This "public policy" test actually is used by the Texas courts in the evaluation of whether the dissimilarity doctrine is applicable. *See Gutierrez*, 583 S.W.2d at 319–22. However, the same test would seem to be appropriately used in deciding as a part of the choice-of-law search whether a policy of Texas would be violated by use of the law of a sister state.

right to sue for any kind of damages. The risk of loss of the airliner and of liability in actual and exemplary damages to its passengers was, and will continue to be, sufficient to cause Delta and its personnel to be fully cognizant of the need to exercise appropriate care in the operation of the airliner.

(c) On the other hand, when viewed from the standpoint of the policies of Florida, there is no question that Florida policy would favor application of the Florida Act to the relationship existing between Florida employers and employees.[4] The Florida Legislature could not have made its policy any plainer than it did when it said in § 440.09(1) of the Florida Act that the compensation provided by the statute is to be available *even if the employee is employed elsewhere than in the State of Florida.* When, as § 6 contemplates, the interests (policies) of Florida are weighed against those of Texas on the issue of whether the exclusivity provision of the Florida Act will be applied, the interests of Florida in that issue quite clearly outweigh the interests of Texas.

(d) The meaningful "justified expectations" to be protected are the expectations of the employer and employee that their relationships will be controlled by the law of the place where the employment was primarily localized and the expectations of Florida that the consequences of a Florida based employer-employee relationship will be governed by Florida law. As was noted in the comment on subsection (2) of § 6 of the *Restatement:*

> Generally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to con-

form to the requirements of another state.

*Restatement* § 6 cmt. g. When Delta subscribed to the workers' compensation laws of Florida for the purpose of controlling the injury/death aspect of the employment relationship in question, it quite properly "molded [its] conduct to conform to the requirements of [Florida]." Therefore, the expectations of Delta that the Florida Act will control are clearly justified.

(e) The basic policy as to the "particular field of law" is the desire and need to have a uniform system of injury/death compensation governing all employers and employees of a particular state. This common policy overrides any deterrence policy of Texas related to exemplary damages. Dissimilarity in the plans of Texas and Florida does not cause the policies of either state to be violated. The Fifth Circuit said in *Burbank v. Ford Motor Co.* that:

> Like Michigan and the 48 states not involved in this controversy, Louisiana maintains a comprehensive workers' compensation scheme. Louisiana's system, like Michigan's, provides immunity from unlimited liability actions to employers and recovery for employees without regard to fault. The quid and the quo are the same under each act. *That the two schemes are not identical in every respect does not support a finding that one is contrary to a "fundamental policy" of the other.*

703 F.2d 865, 866 (5th Cir.1983) (emphasis added).

Moreover, the Texas Supreme Court explained in *Gutierrez* and reiterated in *Duncan* that the goal of a choice-of-law rule

---

**4.** A comment in the *Restatement* on subsection (2) of § 6 discloses the policy of the *Restatement* to cause the consequences of a relationship between parties to be controlled by the law of the main situs of the relationship:

> Which is the state of dominant interest may depend upon the issue involved. So if a husband injures his wife in a state other than that of their domicil, it may be that the state of conduct and injury has the dominant interest in determining whether the husband's conduct was tortious or whether the wife was guilty of contributory negligence (see § 146).

> *On the other hand, the state of the spouses' domicil is the state of dominant interest when it comes to the question whether the husband should be held immune from tort liability to his wife* (see § 169).

*Restatement* § 6 cmt. f (emphasis added). Similarly, there is no logic in applying any law other than the local law of Florida to determine immunity, *vel non,* of an employer from liability to survivors of an employee in a Florida-based employment relationship. Florida is the "state of dominant interest" as to that issue.

should be to meet the demands of our highly mobile modern society. 583 S.W.2d at 317, 665 S.W.2d at 420. Undoubtedly that policy prevails throughout all jurisdictions of the United States. In a mobile society, the rights *inter se* of a particular employer and a particular employee should not vary as the employee travels from state to state. Such a society demands that the rights between the parties remain the same no matter where the employee might be physically located at a particular time. The explanation of the "basic policies" factor given in the comment on subsection (2) of § 6 is as follows:

> *h. Basic policies underlying particular field of law.* This factor is of particular importance in situations where the policies of the interested states are largely the same but where there are nevertheless minor differences between their relevant local law rules. In such instances, there is good reason for the court to apply the local law of that state which will best achieve the basic policy, or policies, underlying the particular field of law involved. This factor explains in large part why the courts seeks to apply a law that will sustain the validity of a contract against the charge of commercial usury (§ 203) or the validity of a trust of movables against the charge that it violates the Rule Against Perpetuities (§§ 269–270).

*Restatement* § 6 cmt. h. The basic policy underlying the field of law pertaining to workers' compensation insurance is the same in Texas as it is in Florida—that is, that there be a comprehensive workers' compensation scheme that provides an employer immunity from common law liability in an action by an employee or his survivors against the employer in exchange for certain benefits, without regard to fault, to the employee or his survivors in the event of injury or death. *See Mullarkey,* 268 So.2d at 366 (for a statement of the Florida basic policy that underlies the Florida Act) and *Middleton v. Texas Power & Light Co.,* 108 Tex. 96, 185 S.W. 556, 558–61 (Tex.1916) (in which the Texas Supreme Court explains the basic policy of the workers' compensation laws of Texas).

(f), (g) Predictability and uniformity of result are more likely to be attained by a rule that causes the consequences of an employment relationship to be governed by the laws of the state of principal situs of the employment. Such a rule likewise lends to ease in the determination and application of the law to be applied.

## E. Consideration of the Tort and Contract Choice–of–Law Rules:

The general principles applicable to tort cases, as set forth in § 145 of the *Restatement,* would not, if controlling, dilute the conclusions that flow from an application of the principles expressed in § 6 as to "the particular issue." A choice-of-law policy expressed by the *Restatement* is that where the "particular issue" is the consequence of a relationship between the parties, such as a law granting immunity from tort liability, the local law of the state where the relationship between the parties has its principal situs should normally govern that issue. *See, e.g., Restatement* § 169.[5] Furthermore, the Texas Supreme Court made clear in *Duncan* that an issue dealing with a bar to recovery, which is independent of the fault and causation issues in a tort action, can be viewed in a contract context.[6] If the primary substan-

---

**5.** A comment on § 169 of the *Restatement* is discussed in footnote 4.

**6.** The basic choice-of-law rule as to contract issues is found at § 188 of the *Restatement.* It is a "most significant relationship to the transaction and the parties" test, applying the principles stated in § 6 of the *Restatement,* with emphasis on contract facts and the location of the parties to the contract. Section 188 reads:

> § 188. Law Governing in Absence of Effective Choice by the Parties

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to *that issue,* has the *most significant relationship to the transaction and the parties under the principles stated in § 6.*

> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

tive issue presented by defendant's motion for summary judgment is viewed in a contract context, *Duncan* strongly suggests that the exclusive remedy provisions of the Florida Act should apply.

In *Duncan*, the Texas Supreme Court applied Texas local law to the determination of the legal effect to be given to a release taken from the survivor of a Texas resident who was killed in an airplane crash in New Mexico. The survivor brought a tort action growing out of the crash in a Texas court. Under New Mexico local law, the release would discharge Cessna, the defendant, from liability. It would not have had that effect under Texas local law. There was no New Mexico defendant involved, with the consequence that New Mexico had no legitimate interest in the effect to be given to the release document. The Texas Supreme Court said:

> We can conceive of no legitimate reason why the New Mexico legislature should be concerned with the application of its statute to a Texas settlement to cut off a Texas resident's claim against a Kansas corporation.

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203.

(Emphasis added). Clearly, the Florida Act would be the appropriate choice of law under the § 188 standard, taking into account the principles expressed in § 6, which already have been discussed in this memorandum opinion and order.

7. Part of the rationale behind § 184 of the *Restatement* is as follows:

> It is thought unfair that a person who is required to provide insurance against a risk under the *workmen's compensation* statute of one state which gives him immunity from liability for tort or wrongful death should not enjoy that immunity in a suit brought in other states. Also to deny a person the immunity granted him by a workmen's compensation statute of a given state would frustrate the

665 S.W.2d at 421. Similarly, the court can conceive of no legitimate reason why a Texas court should hesitate to apply the Florida Act to cut off a Florida resident's claim against a Florida employer, which is a Delaware/Georgia corporation. There is no Texas resident whose rights stand to be affected in a significant way by an application of the Florida Act to the claims made by plaintiff in this case.

### F. Restatement Section 184:

Section 184 of the *Restatement* focuses on the issue raised by Delta's motion for summary judgment.[7] In *Osborn v. Kinnington*, 787 S.W.2d 417 (Tex.App.—El Paso 1990, writ denied), a Court of Appeals of Texas relied on § 184 in deciding that the local law of Alabama should control. While § 184 is not essential to a conclusion that the most-significant-relationship" methodology leads to the Florida Act in this action, the reliance by a Texas court on § 184 is a further indication that the exclusive remedy provision of the Florida Act should be given effect.[8]

> efforts of that state to restrict the cost of industrial accidents and to afford a fair basis for predicting what these costs will be. All states are sympathetic with the policies underlying workmen's compensation, and all states grant certain persons immunity from liability for tort or wrongful death, although the provisions of the various statutes do differ in matters of detail. For all of these reasons, a state will not hold a person liable for tort or wrongful death under the circumstances stated in the present rule.

*Restatement* § 184 cmt. b. These same remarks are applicable to the factor contemplated by § 6 of the *Restatement* having to do with the "basic policies underlying the particular field of law."

8. Plaintiff's contention that § 184 is not applicable because Delta has not established that Winston Lee, individually, obtained an award for his wife's injury or is entitled to recover under the *Florida Act* is without merit because the Florida Act provides that a benefit as to an employee whose death results in an accident is payment of $2,500.00 for funeral expenses, Florida Act § 440.16(1)(a), which necessarily would inure to the benefit of the surviving spouse. Moreover, the Florida Act provides for payment of weekly compensation benefits to a dependent spouse of a deceased employee. *Id.* at § 440.-16(1)(b). While the court does not need to reach the issue, the argument reasonably could be made that the right of the surviving spouse to

**G. Choice-of-Law Cases Cited by Plaintiff:**

In his response to Delta's motion for summary judgment, plaintiff calls the court's attention to three airliner crash cases in which courts have applied the local law of the state where the crash has occurred. Those cases are *In re Air Crash Disaster Near New Orleans, Louisiana, on July 9, 1982*, 789 F.2d 1092 (5th Cir. 1986), *aff'd en banc*, 821 F.2d 1147 (5th Cir.1987) [9]; *In re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979*, 644 F.2d 594, 615 (7th Cir.), *cert. denied*, 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981); and *In re Air Crash Disaster at Washington, D.C. on January 13, 1982*, 559 F.Supp. 333 (D.D.C.1983).[10] The decisions in those cases appear to be sound under the facts with which the respective courts were dealing. However, none of those cases involved a claim of immunity growing out of an employer-employee/workers' compensation relationship centered in a state different from the place where the crash occurred. For the reasons explained above, that distinguishing factor leads to a different conclusion as to "the particular substantive issue" in question. *Duncan*, 665 S.W.2d at 421. The issue now before the court should be treated separately from, and independently of, other issues related to the August 2, 1985, airliner crash at Dallas/Fort Worth Airport. Where, as here, the issue before the court is the effect of the workers' compensation laws of Florida on a spouse's right to recover for the death of his Florida-based stewardess-wife in an airliner crash that occurred in another state, Florida law prevails as to that issue. *In re Air Crash Disaster at Boston, Massachusetts on July 31, 1973*, 415 F.Supp. 206, 210 (D.Mass.1976). *See Garcia v. Total Oilfield Services, Inc.*, 703 S.W.2d 411, 415

(Tex.App.—Amarillo), *writ ref'd, n.r.e.*, 711 S.W.2d 237 (Tex.1986) (Texas law applied where deceased and survivors were Texas residents although decedent was employed in another state at the time of his death).

**H. The Florida Act Should be Given Effect:**

Based on the application of the choice-of-law principles that are discussed under this heading to the undisputed facts of this case, the court concludes that the exclusive remedy provision of the Florida Act should be given effect.

## VII.

*Texas Public Policy is Not so Offended that it will Prevent Enforcement of the Florida Act*

In the November 12, 1987, order, the court relied on the public policy test stated in the *Gutierrez* opinion of the Texas Supreme Court in support of its conclusion that a public policy of Texas favors the maintenance of lawsuits for exemplary damages in both wrongful death and survival actions. Actually, the test the Texas court expressed in *Gutierrez* was applied by the Texas court in connection with a determination of whether the dissimilarity doctrine was applicable. 583 S.W.2d at 319–22. In the instant action, the court is not faced with a question of whether the action should be dismissed because the laws of another jurisdiction are so different from those of Texas as to make it impossible for a Texas court to apply and enforce them, which is the dissimilarity issue with which the Texas court dealt in *Gutierrez*. *See* 583 S.W.2d at 313. Rather, the issue here is the broader choice-of-law problem that already has been discussed.

receive compensation benefits if he can prove dependency is enough to satisfy the "plaintiff could obtain an award for the injury" condition of § 184 even if dependency cannot be proved in a particular case. *See Restatement* § 184(b).

**9.** *Certiorari* was granted, the judgment vacated, and the case remanded for further consideration on another ground after the filing of plaintiff's brief. 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989).

**10.** Although plaintiff argues that the laws of one state—Texas—should apply as to all issues, both the Seventh Circuit and D.C. cases stand for the proposition that each issue should be separately evaluated to determine which state's law should apply thereto. 644 F.2d at 611; 559 F.Supp. at 341 (discussing the concept of dépecage).

The court has decided that the public policy considerations should not be separated out, and treated as independently dispositive, but that they should, instead, be but factors to be considered in the more comprehensive choice-of-law evaluation and determination. As indicated in preceding parts of this memorandum opinion and order, when the policy of Texas on exemplary damages is weighed against the other factors that are to be taken into account in the choice-of-law evaluation, it is outweighed by the factors that point to the use of the Florida Act for a determination of recoverability by plaintiff of the damages he seeks. Moreover, the court has now decided that, even if the public policy issue were to be considered separately, the Florida Act would pass the test expressed in *Gutierrez.*

## VIII.

### *Plaintiff's Motion*

On July 17, 1992, plaintiff [11] filed a motion for partial summary judgment against Delta. For the reasons discussed herein, the court has determined that Delta's motion for summary judgment should be granted. Therefore, plaintiff's motion will be denied.

### ORDER

For the reasons given above:

The court ORDERS that Delta's motion for reconsideration be, and is hereby, granted, that the order signed by the court November 12, 1987, be, and is hereby, set aside, that Delta's motion for summary judgment be, and is hereby, granted, that plaintiff be, and is hereby, denied any recovery from Delta, that plaintiff's action against Delta be, and is hereby, dismissed, and that Delta recover from plaintiff costs of court incurred by it.

The court further ORDERS that plaintiff's motion for partial summary judgment against Delta be, and is hereby, denied.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the rulings expressed in this order so that the dismissal of the claims of plaintiff against Delta, and the adjudication that plaintiff has no right of recovery from Delta, shall be final.

The court further ORDERS that:

(a) As of the entry of this order and its related final judgment, all claims and causes of action asserted in this action by plaintiff against Delta are severed and separated into a separate action, which shall be styled "Winston Lee, individually and on behalf of the estate of Alyson Lee, plaintiff v. Delta Air Lines, Inc., defendant", and shall bear No. 4:87–CV–097–A on the docket of this court, which is the style and number such claims and causes of action had before their consolidation with No. 4:92–CV–251–A and No. 4:92–CV–245–A; and

(b) As of the entry of this order and its related final judgment, the claims and causes of action that originally were carried on the docket of this court under No. 4:92–CV–245–A and No. 4:92–CV–251–A, respectively, shall remain consolidated and from this point forward shall, as consolidated, bear No. 4:92–CV–245–A, and shall be styled "Donna Bernstein Teems, as personal representative of the estate of Sidney T. Bernstein, and Winston Lee, individually and on behalf of the estate of Alyson Lee, plaintiffs v. United States of America, defendant", and all filings in the consolidated action shall be made under such number and style and shall indicate that it is a consolidated action by the placement of "(consolidated with No. 4:92–CV–251–A)" beneath the cause number in the caption.

SIGNED July 21, 1992.

---

11. The motion purports to be filed on behalf of Winston Lee, Individually and on Behalf of the Estate of Alyson Lee, and Walter Arnold. The record does not reflect, and the court does not consider, that Walter Arnold is a party to this action.